**SOUTHTOWN PLUMBING, INC., et al., Appellants,**

v.

**HAR–NED LUMBER CO., INC., et al., Respondents.**

**No. C7–92–177.**

Court of Appeals of Minnesota.

Dec. 8, 1992.

---

David E. Albright, St. Paul, for appellants.

Joseph A. Nilan, Lang, Pauly & Gregerson, Minneapolis, for respondents.

Considered and decided by NORTON, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellants were subcontractors on a residential construction project. Respondents financed the project. The owner/contractor failed to pay appellants for their labor, claiming that respondents had wrongfully refused to furnish the final payments of funding for the project. Appellants brought suit against respondents, claiming unjust enrichment. Following appellants' case in chief, the trial court granted respondents' motion for directed verdict and dismissed the claim with prejudice and on the merits. We affirm.

## FACTS

Appellants, five subcontractors, provided labor and materials on a residential construction project. Respondents, Har–Ned Lumber Company and Home Lumber Company, provided financing and lumber materials. John Van Abel, not a party to this action, was the owner of the property, the mortgagor to Home, and the general contractor on the project.

In April 1988, Van Abel and respondent Home entered into an agreement that Van Abel would build a house and Home would provide the construction financing on the project. The agreement was reduced to writing in the form of a construction loan

agreement, a mortgage, a first mortgage note, and a guaranty. These documents contain numerous terms and conditions, including the following:

(1) The amount of the loan was to be $240,000.

(2) Van Abel was required to insure the property.

(3) Van Abel was required to pay all persons who furnished labor or materials in connection with the construction.

(4) Van Abel was not permitted to be in default of any of the terms and conditions.

(5) Home was permitted to discontinue making advance payments if Van Abel was in default and Home could then foreclose its mortgage.

(6) No other person had any rights or remedies under the financial agreement.

(7) There were no third-party rights under the agreement.

(8) Home was not to have any obligation or liability to any claimant for labor performed or materials furnished.

(9) Van Abel promised to repay on or before January 1, 1989, all funds loaned.

Van Abel was not an employee or agent of Home, nor was Van Abel authorized to request or enter into contracts on behalf of Home. In addition, Van Abel was not authorized to assign any rights under the contract to a third-party, such as the subcontractors in this case.

Each appellant is a subcontractor who contracted with Van Abel to construct the house. Van Abel selected each of these companies, negotiated each of their contracts, entered into each contract, supervised the work, accepted pay requests, made draw requests from Home, and paid the subcontractors directly. Van Abel also approved all change orders and work performed. Van Abel understood it was his obligation to pay the subcontractors. Each of the subcontractors in turn signed a contract with Van Abel which demonstrated he was responsible for their payments. Home never negotiated with any of the contractors about the project. Home did not require that the contractors give up any mechanic's lien rights nor any rights to pursue actions against Van Abel. Finally, Home did not supervise or inspect the work of the subcontractors.

Between April and December 1988, the construction of the house progressed. Pursuant to the financing documents, Van Abel periodically submitted draw requests to Home. Home then disbursed a portion of the loan proceeds directly to Van Abel, and Van Abel issued checks directly to the appellants. Appellants, respondents, and Van Abel all were familiar with this process.

In December 1988, near the completion of the project, appellants submitted their bills to Van Abel. The subcontractors' uncompensated work totaled approximately $50,000. Van Abel submitted his final draw request to Home on December 21, 1988. The note with Home was due in ten days, on January 1, 1989. A dispute arose between Van Abel and Home. First, Van Abel had failed to provide the required insurance on the project and property. Failure to provide insurance constituted a breach of the agreement. Second, the final draw request was several thousand dollars in excess of the remaining loan funds. Third, the final draw request did not include any provision for amounts owing to Home for lumber supplied on the project. For these reasons, Home refused to grant the draw request. Van Abel, in turn, failed to pay the appellants.

In 1989, Van Abel defaulted on his note with Home. Home foreclosed on the mortgage and resold the house at a $50,000 loss. Appellants filed for mechanics' liens but failed to enforce them. Instead, appellants voluntarily relinquished their legal remedies based on the mechanics' lien statutes and entered into an agreement with Van Abel whereby they would collaborate in this lawsuit. Van Abel signed an agreement purporting to assign all of his contract rights against Home to the appellants. This agreement contradicted the contract that Van Abel had signed with Home. Appellants subsequently brought this suit against Home claiming unjust enrichment.

Appellants were given an opportunity to present all of their evidence before a jury.[1] At trial, Van Abel testified that he had two lines of credit totaling $45,000 available in December 1988 for any purpose. After appellants had presented their evidence, respondents were granted a directed verdict.

## ISSUE

In an action for unjust enrichment, did the trial court err in directing a verdict in favor of respondents, where the appellants failed to seek their statutory remedy under mechanics' lien statutes.

## ANALYSIS

We must make an independent judgment about the appropriateness of the directed verdict, and must accept as true all evidence favorable to the appellants and all reasonable inferences that can be drawn from the evidence. *Chemlease Worldwide, Inc. v. Brace, Inc.*, 338 N.W.2d 428, 432 (Minn.1983) (citing *Walton v. Jones*, 286 N.W.2d 710, 714 (Minn.1979)).

To establish an unjust enrichment claim it must be shown that a party has knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention. *In re Stevenson Assocs., Inc.*, 777 F.2d 415, 421 (8th Cir.1985); *Ylijarvi v. Brockphaler*, 213 Minn. 385, 393, 7 N.W.2d 314, 319 (1942). The right of recovery for unjust enrichment is equitable. *Lundstrom Constr. Co. v. Dygert*, 254 Minn. 224, 231, 94 N.W.2d 527, 533 (1959); *see also Hommerding v. Peterson*, 376 N.W.2d 456, 459 (Minn.App.1985) (action for unjust enrichment is quasi-contractual agreement implied by law); *Dusenka v. Dusenka*, 221 Minn. 234, 238, 21 N.W.2d 528, 531 (1946) (quasi-contractual obligation

is defined in equity and good conscience and is imposed by law to prevent unjust enrichment).

It is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law. *Pankow Constr. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 616 (9th Cir.1980) (mechanics lien statute limiting contractor's remedy for payment of construction costs bars recovery on basis of unjust enrichment); *U.S. Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981) (if equitable relief were granted, statutory restrictions would be circumvented); *Kingery v. Kingery*, 185 Minn. 467, 470, 241 N.W. 583, 584 (1932) (equity follows law and will not disregard statutory law or grant relief prohibited thereby); *see also Nevada Nat'l Bank v. Snyder*, 826 P.2d 560, 563 (Nev.1992) (where they failed to enforce their mechanics' liens, contractors in suit against lenders were not entitled to relief under the theory of unjust enrichment). Relief under the theory of unjust enrichment is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature.

Appellants had a remedy through the use of their mechanics' liens or in a breach of contract suit against Van Abel. Minn.Stat. §§ 514.01-.17 (1990) were enacted to give contractors on construction projects remedies at law to obtain compensation for their work. However, appellants chose not to enforce their mechanics' liens. Because they had a statutory remedy and chose not to enforce it, they cannot make out an equitable claim for unjust enrichment. The trial court's decision directing a verdict in favor of the respondents was proper.

1. The basis of recovery on the doctrine of contract implied in law, or quasi-contract is unjust enrichment. Actions brought upon the theories of unjust enrichment and quasi-contract are essentially the same. *See* 42 C.J.S. *Implied Contracts* § 5 1991. "Under the theory of quasi-contract, the right to recover is governed by principles of equity, but the remedy [the obligation producing the right to recovery] is created and imposed by law to prevent unjust enrich-

ment at the expense of another." *Lundstrom Constr. Co. v. Dygert*, 254 Minn. 224, 231, 94 N.W.2d 527, 533 (1959). As a general proposition, juries decide questions of fact and trial judges decide questions of equity. The present case was properly before a jury to decide only what in fact transpired between the parties. The proper role of the court here was to decide whether the factual events found by the jury entitled the appellant to any relief in equity.

Despite the general principle that equitable relief is not available when there is an adequate legal remedy, appellants argue that two cases establish their right to relief based upon the theory of unjust enrichment. *Twin City Constr. Co. of Fargo, N.D. v. ITT Indus. Credit Co.*, 358 N.W.2d 716 (Minn.App.1984); *Anderson v. DeLisle*, 352 N.W.2d 794 (Minn.App.1984).

In *Anderson*, the defendant sold a piece of property to the plaintiff on a contract for deed. *Anderson*, 352 N.W.2d at 795. He then watched as the plaintiff spent $25,000 of his own money improving the property. The defendant knew that Anderson, the plaintiff, would not be able to make payments on the contract for deed. *Id.* When the plaintiff defaulted, the defendant foreclosed and made a profit selling the improved house. The court found that the defendant had acted immorally, and it required him to provide restitution to the plaintiff Anderson under the theory of unjust enrichment. *Id.* at 796.

The facts in the present case are distinguishable from those in *Anderson*. Home did not supervise construction of the project. Trial testimony of Home's agent and John Van Abel support the conclusion that Home's only knowledge of the progress of the project came through periodic draw requests from Van Abel. Moreover, Home made no agreement to fund all construction costs, and appellants had assurances for payment only from Van Abel. Appellants did not establish that Home knowingly took advantage of them, and *Anderson* is inapplicable.

In *Twin City*, the lender was unjustly enriched by its refusal to make final payment under the construction contract after completion of work by the contractor. *Twin City*, 358 N.W.2d at 719. The lender and the contractor had agreed that the lender would directly pay the contractor. Moreover, the agreement required the contractor to give up its mechanics' liens. "Essentially, [the contractor] was to complete the construction project without any recourse." *Id.* at 717.

Once again, the present case is distinguishable. Home had no agreement with appellants for payment of their services. Home's agreement was with Van Abel, who in turn was responsible for appellants' compensation. Also, appellants had other avenues of recourse against Van Abel, who testified that he had some other credit available to meet his payment obligation for the project. Because Home did not require the appellants to complete the project without any recourse for compensation, *Twin City* is inapplicable.

## DECISION

The trial court properly directed the verdict in favor of respondents where appellants had failed to pursue their legal remedy under the mechanics' lien statute.

Affirmed.