SERVICEMASTER OF ST. CLOUD, Respondent,

v.

GAB BUSINESS SERVICES, INC., Respondent,

Sentry Insurance, a Mutual Company, Appellant.

No. C9–94–1335.

Court of Appeals of Minnesota.

April 18, 1995.

Review Granted June 14, 1995.

---

Roger C. Justin, Rinke–Noonan, St. Cloud, for respondent ServiceMaster of St. Cloud.

Carol A. Kubic, Pustorino, Pederson, Tilton, & Parrington, P.L.L.P., Minneapolis, for respondent GAB Business Services, Inc.

Joseph F. Lulic, Timothy L. Blakely, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., HUSPENI and MANSUR,* JJ.

## OPINION

HARTEN, Judge.

Appellant insurer challenges the judgment in favor of respondent contractor on the contractor's claims in negligence, unjust enrichment, and estoppel. Appellant also challenges the trial court order denying its motion for indemnity from respondent adjuster. We affirm.

## FACTS

This case arose following a fire in the home of Nancy Mollinedo on November 15, 1990. The home was insured by appellant Sentry Insurance, a Mutual Company (Sentry) under a policy naming the United States Farmer's Home Administration (FHA) as mortgagee. Sentry contracted with respondent GAB Business Services, Inc. (GAB), an independent claims adjuster, to investigate the claim; GAB assigned Steve Kessler to the case. Kessler contacted respondent Ser-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

viceMaster[1] of St. Cloud, Inc. (ServiceMaster), a contractor, and ServiceMaster soon began working to repair the damage to Mollinedo's home.

Sentry eventually denied Mollinedo's claim for insurance proceeds because it believed that she had intentionally set the fire. Sentry instead gave FHA a check for $30,057.18 (the amount ServiceMaster had billed for the repairs) pursuant to the policy's mortgagee clause. In return, FHA gave Sentry a partial assignment of the mortgage on Mollinedo's home. Sentry did not name Service-Master on the check to FHA. Sentry eventually assigned its property interest to Mollinedo to settle a suit brought by Mollinedo to enforce the policy. Mollinedo subsequently filed for bankruptcy. ServiceMaster never received payment for the repairs.

ServiceMaster brought suit against Sentry and GAB for breach of contract and unjust enrichment. ServiceMaster later amended its complaint to include a claim of equitable estoppel, and during the trial, amended it again to include a claim of negligence. The jury found that Sentry had been negligent in failing to include ServiceMaster as a payee on the check to FHA, that ServiceMaster had been negligent in failing to request such payment, that the negligence of each party had been a direct cause of ServiceMaster's damages, that 75% of the negligence should be attributed to Sentry, and that Service-Master's total damages amounted to $24,-375.58. The jury also found that Service-Master had not entered into any contract with Kessler to repair the home.

The trial court subsequently issued findings of fact and conclusions of law (apart from the jury verdict) in which it found for ServiceMaster on the unjust enrichment and equitable estoppel claims and awarded damages on those claims in the amount of $33,-952.68.[2] Sentry now appeals from the judgment and the trial court order denying its posttrial motions, claiming that as a matter of law ServiceMaster did not prove duty or causation on the negligence claim, that Sentry was denied its right to a jury trial on the equitable claims of unjust enrichment and equitable estoppel, that the evidence was not sufficient to support the trial court's findings of unjust enrichment and estoppel, and that the trial court erred in denying its motion for indemnity from GAB.

### ISSUES

1. Did ServiceMaster fail as a matter of law to establish negligence?

    A. Did ServiceMaster fail as a matter of law to show that Sentry had a duty to name ServiceMaster on the check to FHA?

    B. Did ServiceMaster fail to show causation as a matter of law?

2. Was Sentry denied its right to a jury trial on the unjust enrichment and equitable estoppel claims?

3. Was there sufficient evidence to support the trial court's finding in favor of ServiceMaster on its unjust enrichment claim?

4. Was there sufficient evidence to support the trial court's finding in favor of ServiceMaster on its equitable estoppel claim?

5. Did the trial court err in denying Sentry's motion for indemnity from GAB?

### ANALYSIS

■ **1. Negligence claim.** Sentry first claims that the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) with respect to the negligence claim because ServiceMaster failed as a matter of law to show a duty or causation.

A motion for judgment notwithstanding the verdict admits every inference reasonably tending to be drawn from the evidence as well as the credibility of the

---

1. There is some confusion as to the correct spelling of this party's name. Each of the parties referred to "Servicemaster" in its brief. The original complaint and the company's own letterhead, however, refer to "ServiceMaster," and we have adopted that spelling.

2. Under the alternative relief theory, the trial court entered judgment in the amount of $33,-952.68.

testimony for the adverse party. Unless we are able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for judgment notwithstanding the verdict should stand.

*Seidl v. Trollhaugen,* 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

Sentry argues that, as a matter of law, it did not have a duty to name ServiceMaster on the check to FHA. Sentry relies on Minn.Stat. § 65A.11 (1990) in arguing that Sentry did not owe a duty to pay anyone other than the mortgagee, FHA. This statute, however, provides only that, if part of the loss is payable to mortgagees, then their claims should be paid in order of priority; the statute does not bear on the issue whether Sentry had a duty to pay anyone else. *See id.* Consequently, Sentry's reliance on this statute is misplaced.

The main thrust of Sentry's argument focuses on the distinction between payments to homeowners and payments to mortgagees. Under the policy, Sentry was required to pay the claim of the mortgagee (FHA) even if Mollinedo's claim was denied. Sentry admits to a standard practice of naming the contractor on a check to the owner. Nevertheless, George McCorkell, a representative of Sentry, testified that he had never named the contractor on a check to the *mortgagee* when the owner's claim had been denied, and that such a practice was not standard within the industry. Sentry argues that because there was no evidence of a standard procedure within the industry of naming the contractor on a check paid only to the mortgagee, Sentry had no duty to name ServiceMaster on the check to FHA.

Sentry also argues that the actions of Kessler and GAB cannot have created a duty to pay ServiceMaster. We conclude, however, that sufficient evidence was presented to support a finding that Sentry had a duty to name ServiceMaster on the check to FHA.

ServiceMaster's representative, Roger Negaard, testified that ServiceMaster was typically paid by being named on the check to the owner or mortgagee and that he expected to be paid that way in this instance. Negaard also testified concerning a conversation with Kessler, in which Kessler implied that ServiceMaster would be paid even if Mollinedo's claim was denied. Kessler testified that he recommended a joint payment to ServiceMaster, Mollinedo, and FHA because he knew that ServiceMaster had an interest in the property.

McCorkell conceded in his testimony that ServiceMaster had an interest in the property because of its repair work. McCorkell also testified that it was standard procedure for a contractor that has performed work on the property to be named on the check issued by Sentry; only upon cross-examination by Sentry's counsel did McCorkell clarify his earlier testimony, stating that such a standard practice was observed only in cases in which the owner's claim was not denied. McCorkell stated that contractors relied on the insurer's standard practices and that Sentry was obligated to name the contractor on the settlement check over 90 percent of the time, assuming the contractor had an interest in the property and the owner requested such a joint payment.

McCorkell allowed ServiceMaster to continue to repair the home even after he believed that Mollinedo's claim would be denied. In January 1991, McCorkell received a laboratory report concerning the investigation of the cause of the fire; by then he had asked Sentry's attorney to take a sworn statement from Mollinedo. Sentry later received reports from Kessler indicating that ServiceMaster continued its work on the home. In February 1991, Sentry approved a supplemental estimate submitted to Kessler by ServiceMaster. McCorkell conceded that Sentry never informed Kessler or ServiceMaster that ServiceMaster would not be paid by Sentry.

In summary, the testimony indicated that Sentry had a general practice of protecting a contractor's interest in the property. Moreover, Sentry allowed the repairs to continue even after it had decided to reject Mollinedo's claim. We uphold the jury verdict and affirm the trial court's denial of Sentry's

JNOV motion with respect to this issue of duty.

■ Sentry also claims that it is entitled to judgment notwithstanding the verdict on the negligence claim because ServiceMaster failed to show causation as a matter of law. Sentry argues that ServiceMaster did not offer any evidence that, had ServiceMaster been named on the check to FHA, Service-Master would have in fact received payment. Sentry argues that FHA could have refused a check made out to FHA and ServiceMaster jointly because FHA had no obligation to pay ServiceMaster.

We conclude, however, that sufficient evidence of causation was presented to support the jury's finding that Sentry's negligence was a direct cause of ServiceMaster's damages. Both Kessler and Stanton Stensrud, Sentry's expert, testified that a check cannot be negotiated without the signatures of all payees. In addition, Kessler testified that FHA representatives had indicated that FHA would pay ServiceMaster as it completed the repairs. Finally, contrary to Sentry's position, Minn.Stat. § 65A.11 does not preclude naming another party on the check to the mortgagee. We affirm the trial court's denial of Sentry's JNOV motion with respect to the issue of causation.

2. **Right to jury trial.** Sentry next argues that it was denied its constitutional right to a jury trial on the issues of unjust enrichment and equitable estoppel. The jury made no findings relating to these issues; instead, the trial court made its own findings of fact deciding in favor of ServiceMaster. Sentry argues that it had a right to have the issues tried to the jury because ServiceMaster's action was for recovery of money only. ServiceMaster responds that, because these were equitable claims, no right to a jury trial attached.

■ The supreme court has stated that a party has a right to a jury trial on a claim in quasi contract alleging unjust enrichment because, although the right to recover is based on the principles of equity, the remedy is governed by law. *Roske v. Ilykanyics,* 232 Minn. 383, 389, 45 N.W.2d 769, 774 (1951). Here, Sentry had a right to a jury trial on

the unjust enrichment claim because Service-Master sought only money damages. The same right attached with respect to the equitable estoppel claim. *See Transamerica Ins. Group v. Paul,* 267 N.W.2d 180, 183 (Minn. 1978) (principle of equitable estoppel applies in cases both at law and in equity).

■ Nevertheless, in its pretrial informational statement, Sentry expressly waived its right to a jury trial pursuant to Minn. R.Civ.P. 38.02. In addition, although Sentry's trial memorandum addressed the unjust enrichment and estoppel claims, its proposed jury instructions and special verdict form omitted any reference to those claims. We affirm the trial court ruling that Sentry waived its right to a jury trial on the issues of unjust enrichment and equitable estoppel.

■ **3. Unjust enrichment.** Sentry contends that the evidence was not sufficient to support the trial court's findings in favor of ServiceMaster on the unjust enrichment claim. We will not set aside a trial court's findings of fact unless they are clearly erroneous. Minn.R.Civ.P. 52.01.

■ To establish its unjust enrichment claim, ServiceMaster had to show that Sentry knowingly received something of value, while not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention. *Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn.App.1992). Relief under this theory is not available when there is an adequate remedy at law. *Id.* The claim is available "if one party is unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Thompson Plumbing Co. v. J.E.C., Inc.,* 422 N.W.2d 26, 28 (Minn.App.1988).

■ Sentry first argues that ServiceMaster may not recover for unjust enrichment because ServiceMaster had an adequate remedy at law—a mechanics' lien—by which it could have protected itself. Sentry also contends that it did not receive a benefit here; rather, it suffered a loss because it had to pay out on the claim. Finally, Sentry claims that its actions were not unjust in the sense that they were illegal or unlawful.

ServiceMaster responds that Sentry did benefit from the repairs. In return for its payment to FHA, Sentry received a partial mortgage. ServiceMaster claims that the value of this property interest held by Sentry was increased by the repairs, which point McCorkell conceded. ServiceMaster also argues that Sentry's receipt of this benefit was unjust in light of the evidence that Sentry allowed ServiceMaster to continue the repairs long after Sentry suspected that Mollinedo's claim would be denied. ServiceMaster notes that the jury, in finding Sentry negligent, found that Sentry's actions were unlawful and, thus, unjust.

ServiceMaster relies on *Twin City Constr. Co. v. ITT Indus. Credit Co.*, 358 N.W.2d 716 (Minn.App.1984). In *Twin City*, we upheld a summary judgment in favor of the plaintiff contractor, holding that the contractor was entitled to recover on its claim of unjust enrichment as a matter of law. *Id.* at 717–19. We stated that

> it would be inequitable to permit the financier of a construction project to retain funds committed to a project after completion of the work by the contractor.

*Id.* at 719. ServiceMaster notes that the plaintiff in *Twin City* was allowed to recover for unjust enrichment even though it failed to pursue its mechanics' lien remedies. *See id.*

That same year, we decided *Anderson v. DeLisle*, 352 N.W.2d 794 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 8, 1984). In that case, the DeLisles agreed to sell some land to Anderson. *Id.* at 795. Anderson made improvements to the property, but then defaulted on the contract. *Id.* In upholding a jury verdict in favor of Anderson on his unjust enrichment claim, we stated as follows:

> In this case there was no mistake or fraud by the vendors. But, DeLisles stood silent and watched Anderson make extensive improvements to their property. They contracted to retain those improvements upon default knowing that because of Anderson's financial problems there was little or no chance that he could perform under the contract. In such a situation, the jury reasonably could find that equity and good conscience require DeLisles to compensate Anderson for the improvements.

*Id.* at 796. ServiceMaster argues that Sentry stood by and watched ServiceMaster make the improvements knowing that there was a good chance that ServiceMaster would not receive payment for the work; therefore, ServiceMaster contends that the trial court's findings are not clearly erroneous.

Sentry argues that *Southtown*, 493 N.W.2d 137, is more directly on point. In that case, we upheld a directed verdict in favor of the defendant mortgagee, holding that the plaintiff subcontractors could not recover for unjust enrichment as a matter of law. *Id.* at 138–41. We held that the subcontractors could not make out an equitable claim for unjust enrichment because they had chosen not to enforce their mechanics' liens. *Id.* at 140. Sentry argues that ServiceMaster's claim likewise must fail.

In *Southtown*, we distinguished *Anderson* noting that the mortgagee in *Southtown* knew of the subcontractors' progress only through periodic draw requests from the owner, who was also the general contractor. *Id.* at 141. In addition, the mortgagee had not agreed to fund all construction costs, and the subcontractors had had assurances of payment only from the owner. *Id.* We stated that *Anderson* was inapplicable because the subcontractors had not established that the mortgagee had knowingly taken advantage of them. *Id.*

In *Southtown*, we also distinguished *Twin City*. In *Twin City*, the mortgagee agreed to finance the project only if the contractor agreed to forego its mechanics' lien remedies. *Twin City*, 358 N.W.2d at 717. In *Southtown*, on the other hand, the mortgagee did not require the subcontractors "to complete the project without any recourse for compensation." *Southtown*, 493 N.W.2d at 141.

Sentry argues that *Twin City* does not apply in the present case because ServiceMaster was not required to give up any recourse to payment. *Anderson* would not apply because the availability of a mechanics' lien was not an issue in that case. Therefore, Sentry argues, ServiceMaster cannot

recover for unjust enrichment under the principles of *Southtown.* We disagree.

It is true that ServiceMaster was not explicitly commanded to give up its mechanics' lien remedies. Sentry effectively persuaded ServiceMaster to forego any mechanic's lien remedies, however, through its implied promise that ServiceMaster would be paid. *Southtown* does not control because Service-Master, in essence, *did* have assurances from Sentry that Sentry would provide payment; Sentry was not nearly as removed from the project in this case. We conclude that the trial court's findings with respect to the unjust enrichment claim are not clearly erroneous.

■■■ **4. Equitable estoppel.** Sentry also argues that the evidence was not sufficient to support the trial court's findings in favor of ServiceMaster on the equitable estoppel claim. Specifically, the trial court found that Sentry's conduct

> implied that Sentry would either pay Servicemaster directly for Servicemaster's work or ensure ServiceMaster's payment by naming Servicemaster on the structure damage settlement check.

Again, the findings will not be reversed unless clearly erroneous. Minn.R.Civ.P. 52.01.

To support a claim of equitable estoppel, a plaintiff must demonstrate

> that the defendant, through his language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice.

*Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980). The plaintiff must show "that he suffered some loss through his reasonable reliance on that conduct." *Id.*

The trial court found evidence supporting its conclusion that Sentry impliedly promised to pay ServiceMaster. Our review of the record supports the position that, subsequent to its realization that Mollinedo's claim would be denied, Sentry continued to carry on business as usual, which included approval of new estimates from ServiceMaster. Sentry's failure to notify ServiceMaster at that time could reasonably have served as the basis for the trial court's ultimate finding of estoppel. Consequently, we hold that the trial court's

findings with respect to this issue are not clearly erroneous.

■■■ **5. Indemnity.** Finally, Sentry challenges the trial court's order denying its motion for indemnity from GAB for the amount of the judgment and for its attorney fees and costs.

> It is well settled that where a party has incurred liability for damages by the tortious act or breach of duty of another and is called upon to defend an action for such damages, he is entitled to indemnity against the one whose wrongful actions have created his liability.

*O'Connell v. Jackson,* 273 Minn. 91, 96, 140 N.W.2d 65, 69 (1966). In such a case, the party is also entitled to indemnity for attorney fees incurred in defending the action. *Id.* Sentry asserts that its liability arose only from the acts of GAB, and because it tendered defense of the action to GAB, it is entitled to indemnity for the judgment and attorney fees.

GAB responds that Sentry's liability resulted from its own wrongful conduct. GAB notes that the jury specifically found that Sentry had been negligent in failing to name ServiceMaster on the check to FHA; the jury did not find any wrongdoing by GAB. GAB also points out that the unjust enrichment claim was based on a benefit received by Sentry, not by GAB; therefore, Sentry's liability on that claim is not vicarious or derivative. Finally, GAB argues that, in light of the jury's finding that ServiceMaster should have been named on the FHA check, GAB cannot have acted wrongfully because it recommended that such a joint payment be made.

We conclude that Sentry is not entitled to recover indemnity from GAB. Sentry's argument assumes that any duty it may have had to pay ServiceMaster arose from GAB's conduct. This argument ignores the possibility that the jury's finding of negligence was based on the acts of Sentry and the industry practices. In addition, ServiceMaster's unjust enrichment claim was based in part upon its allegations that Sentry unjustly allowed ServiceMaster to continue its work even after Sentry became confident that Mollinedo's

claim would be denied. Finally, a review of the record does not yield any evidence that GAB did anything wrong or exceeded its authority in dealing with ServiceMaster. We hold that Sentry's liability arose from its own acts. The trial court properly denied Sentry's motion for indemnity.

## DECISION

The trial court properly denied Sentry's motion for judgment notwithstanding the verdict with respect to the negligence claim because ServiceMaster did not fail as a matter of law to show duty or causation. Sentry waived its right to a jury trial on Service-Master's unjust enrichment and equitable estoppel claims, and the evidence was legally sufficient to support the trial court's findings with respect to those claims. The trial court properly denied Sentry's motion for indemnity from GAB.

**Affirmed.**