**NORTHWESTERN PUBLIC SERVICE, a division of Northwestern Corporation, f/k/a Northwestern Public Service Company, Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Defendant.**

No. CIV. 99–4182.

United States District Court,
D. South Dakota,
Southern Division.

Nov. 7, 2002.

Richard O. Gregerson, James E. Moore, Woods, Fuller, Shultz & Smith, Sioux Falls, Stephen J. Powell, Jim D. DeKoster, Swisher & Cohrt, PLC, Waterloo, IA, for Plaintiff.

Thomas G. Fritz, Lynn, Jackson, Shultz & Lebrun, Rapid City, R. Alan Peterson, Lynn, Jackson, Shultz & Lebrun, Sioux Falls, Eric F. Quandt, Christopher T. Sheean, Caroline C. Heon, Kelley, Drye & Warren, LLP, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

The defendant, Union Carbide Corporation, has filed a Motion for Summary Judgment, which has been fully briefed by the parties. Additional motions were filed by defendant to exclude a settlement agreement, and to strike an expert report and affidavit. The plaintiff, Northwestern Public Service, filed a motion for leave to file a corrected and substituted statement of material facts and a motion to exclude the NTSB [1] report. During a pretrial conference held on November 4, 2002, the Court: (1) denied defendant's motion to strike and exclude expert report and affi-

1. NTSB is an acronym for the National Trans-    portation Safety Board.

968

davit, Doc. 65, but ordered that defendant may take a supplemental deposition of Donald Duvall before the trial if so desired; (2) granted defendant's motion to exclude a settlement agreement, Doc. 64, for purposes of the summary judgment motion; (3) granted plaintiff's motion for leave to file a substituted statement of undisputed material facts, Doc. 70; (4) granted plaintiff's motion to exclude the NTSB report, Doc. 71, for purposes of the summary judgment motion; and (5) denied defendant's motion to compel, Doc. 50, as moot. For the reasons stated below, defendant's summary judgment motion is granted in part and denied in part.

## BACKGROUND

This case involves polyethylene pipe that plaintiff installed between 1971 and 1974 as part of its natural gas distribution systems in South Dakota and Nebraska. The pipe at issue was purchased by plaintiff from Century Pipe Company and Century Utility Products, Inc., as well as from Amdevco Products, Inc.. The pipe was made from a chemical compound known as DHDA–2077 Tan ("Tan resin"), which was developed, manufactured, distributed and sold by defendant to companies including Century Pipe and Amdevco. Plaintiff alleges that it discovered defects in pipe made with the Tan resin in 1997 and that these defects caused the pipe to be subject to premature failure, unreasonably dangerous, and a threat to public safety. Plaintiff claims that, as a result of these defects, it has had to replace all of the pipe made with the Tan resin in its gas distribution systems and seeks damages from defendant for the expenses incurred to replace the pipe.

Viewing the facts in the light most favorable to plaintiff, the facts are as follows. The basic misrepresentation that plaintiff alleges defendant made was that the Tan resin complied with industry and regulatory requirements to be rated a PE 2306

polyethylene pipe suitable for use in underground natural gas distribution systems. As part of this misrepresentation, plaintiff alleges defendant concealed facts from it and the industry that the Tan resin failed to meet industry standards and was not suitable for use in underground natural gas distribution systems.

The PE 2306 rating, which plaintiff contends the Tan resin does not qualify for, can be obtained by satisfying the standards of the Plastic Pipe Institute ("the Institute"). Defendant obtained a PE 2306 rating for DHDA 2077 Black ("Black resin"), a resin developed and manufactured by defendant that was utilized to make pipe for water distribution. To obtain the PE 2306 rating, the pipe made with the Black resin had to be tested in accordance with the Institute's procedures, and the testing had to be submitted to the Institute for rating and to obtain an approved "listing." While the listing was obtained by defendant, plaintiff contends the defendant fraudulently obtained that rating by submitting insufficient and incomplete test data.

The reason for the plaintiff's focus on the Black resin is that defendant asserts it relied in part upon the Institute's rating for the Black resin to justify its representation to the gas distribution industry, including plaintiff, that the Tan resin qualified as a PE 2306 compound because the Black resin is the precursor for the Tan resin. Thus, if defendant fraudulently obtained the PE 2306 rating for the Black resin, plaintiff argues, then it is liable for fraud in representing that the Tan resin qualified as a PE 2306 compound.

Before defendant developed and distributed the Tan resin, a competitor, DuPont, had already entered the natural gas plastic pipe distribution market with a product called Aldyl A. Plaintiff contends that the defendant introduced the Tan resin to

compete with DuPont, and fraudulently represented to the marketplace that the Tan resin was a PE 2306 compound that was substantially equivalent to Aldyl A. That the Tan resin was an inferior compound to Aldyl A, plaintiff claims, was known to defendants who, after introducing the Tan resin, continued its attempts to develop a product that truly was the substantial equivalent to Aldyl A.

The development and testing of a new composition was a three-step process in the late 1960's when defendant sought the Institute's listing of the Black resin. The first step involved the formulation of the composition, which was then subjected to laboratory "bench-scale" experiments to determine if the composition exhibited the anticipated property requirements. The second step involved a pilot scale production of the composition utilizing equipment and conditions intended to accurately replicate those to be used in actual production. The results of the pilot scale production would then be evaluated for compliance with specified requirements, especially its long-term strength characteristics. If the composition was determined to be satisfactory after the evaluation at the second step, the third step of actual production would be performed.

In order for pipe to be marketed for water distribution, the pipe had to be manufactured from a composition approved by the National Sanitation Foundation ("NSF"). One of the NSF requirements was that the composition, i.e. the Black resin, had to be listed by the Institute. Thus, defendant was required to obtain a listing from the Institute before it could market the Black resin for its intended use. The three-step testing process described above was initiated in 1965 to obtain the Institute's listing of the Black resin.

Plaintiff contends that in the submission of test data regarding the Black resin in 1966 to 1968, defendant failed to submit certain test data, which plaintiff claims would have caused the Black resin to fail to satisfy the Institute's standards for the PE 2306 rating. The data defendant failed to submit to the Institute related to pilot-plant test batches that were determined by Mr. Peter Lucchesi to be invalid and thus did not properly represent the long-term strength properties of the Black resin. Lucchesi was the individual employed by defendant who was responsible for obtaining and submitting test data to the Institute for the Black resin. Plaintiff's experts opine that defendant's failure to submit the test data was done with an intent to deceive. Further, plaintiff's experts opine that the testing performed by defendant after the Tan resin was released on the market does not demonstrate that the Tan resin met the PE 2306 requirements.

Defendant admits that certain test data on the Black resin was not submitted to the Institute, but claims it was not done to deceive the Institute. Defendant's expert has opined that it is legitimate to not submit certain test data to the Institute, especially pilot-plant test data, and that the test data not submitted regarding the Black resin was appropriately withheld by defendant. Thus, defendant's expert opines there was no intent to deceive the Institute or the industry regarding either the Black resin or the Tan resin. Moreover, defendant's expert opines that testing conducted after the Tan resin was released on the market demonstrated that the Tan resin met the PE 2306 requirements.

Plaintiff contends that in addition to fraudulently obtaining the PE 2306 rating for the Black resin, an intent to deceive the market can be inferred from defendant's internal correspondence relating to the Tan resin. In one communication

plaintiff claims defendant's employee admits that defendant had tried to "force fit" unsuitable products into the gas distribution market. (Plaintiff's Appendix of Documentary Evidence, Ex. 47.) Defendant counters that the term "force fit" in Exhibit 47 refers to the product 2078 Tan, which is a different product from the Tan resin.

A second communication plaintiff points to as evidence of intent to deceive was written on June 8, 1972, wherein the author states "[w]e perceived the 'jig was up' on 2077 or 2078 and in March pointed out that our new experimental product ... would be a good candidate." (Plaintiff's Appx., Ex. 58.) The phrase "the jig is up" is defined as "no chance is left." Webster's New World Dictionary, 1984 (pocketsize edition). The internal correspondence containing this phrase concerned problems defendant was having competing against DuPont's product, Aldyl A, in the gas distribution market. While this correspondence acknowledges that one customer, Mueller Company, was no longer pleased with the Tan resin, defendant contends that the correspondence does not state that the Tan resin or DHDA 2078 did not meet PE 2306 qualifications or that either product was unfit for use in natural gas distribution systems. (Plaintiff's Appx., Ex. 58.)

The third internal communication pointed to by plaintiff is a monthly report date November 23, 1971 from G.C. Shipston, wherein he states "[w]ith DHDA 2077 Tan[,] gas pipe material contamination with natural, black and brown pellets plague us. Here we're in danger of losing the whole ball game." (Plaintiff's Appx., Ex. 38.) Defendant points out that this communication does not state that the Tan resin did not meet PE 2306 qualifications.

In this lawsuit, plaintiff seeks to recover the cost of replacing the pipe made with Tan resin as well as punitive damages. The Court previously dismissed the counts in plaintiff's Amended Complaint for negligence and strict products liability as barred by the economic loss doctrine. *See Northwestern Public Service v. Union Carbide Corp.*, 115 F.Supp.2d 1164 (D.S.D. 2000). The remaining counts in the Amended Complaint are: (1) Count III—Fraud—Intentional Misrepresentation; (2) Count IV—Fraud—Concealment; (3) Count V—Breach of Express Warranty; (4) Count VI—Breach of Implied Warranty of Merchantability; (5) Count VII—Breach of Implied Warranty of Fitness for a Particular Purpose; (6) Count VIII—Restitution—Unjust Enrichment; (7) Count IX—Deceit; and (8) Count X—Deceptive Trade Practices.[2] In its Motion for Summary Judgment, defendant seeks the entry of judgment in its favor on each of these counts.

Defendant contends it is entitled to summary judgment because: (1) there is no evidence of deceitful intent, concealment or intentional misrepresentation of fact; (2) plaintiff's breach of warranty claims are barred by the statute of limitations because plaintiff has failed to establish fraudulent concealment to toll the limitations period; and (3) an adequate remedy exists at law, which bars plaintiff's claim for restitution. Plaintiff counters that: (1) there is substantial evidence from which a jury could find that defendant acted with intent to deceive; (2) there is sufficient evidence

**2.** The Motion to Dismiss was originally filed with respect to the original Complaint. Just before oral argument on the Motion to Dismiss, however, plaintiff filed an Amended Complaint, adding several new allegations to its existing causes of action, as well as two additional causes of action. Following oral argument on the Motion to Dismiss, the Court allowed each party to file a brief on how the amendments to the Complaint affected the issues raised in the Motion to Dismiss. This Memorandum Opinion and Order addresses the Amended Complaint.

of fraudulent concealment to toll the statute of limitations; and (3) plaintiff is entitled to recover, as restitution from defendant, all of its expenses incurred to replace the pipe made with Tan resin.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)).

The parties agree that this case is governed by the substantive law of South Dakota. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When this Court is applying South Dakota law under *Erie*, and the South Dakota Supreme Court has not specifically addressed an issue, the Court must determine what the state supreme court would probably hold were it to decide the issue. *See Farr v. Farm Bureau Ins. Co. of Nebraska*, 61 F.3d 677, 679 (8th Cir.1995). In resolving such questions, the Court may consider relevant state precedent, analogous decisions, scholarly works, and other reliable data. *See id.* These data include judicial decisions from other jurisdictions whose doctrinal approach to legal matters is substantially the same as South Dakota's and developing trends in the relevant field of substantive law. *See* 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4507, at 195–200 (1996).

### A. Common Law Fraud Claims

Plaintiff states two separate claims of fraud in its Amended Complaint, Count III is for "Fraud—Intentional Misrepresentation," which alleges that defendant fraudulently represented to the Institute and others, including plaintiff, that the Tan resin complied with industry and regulatory requirements to be rated as a PE 2306 polyethylene pipe suitable for use in natural gas distribution systems. The claim is that defendant knew the Tan resin did not qualify as a PE 2306 polyethylene pipe compound because it failed to conduct proper testing and it had knowingly submitted false, incomplete and misleading data to the Institute regarding the Black resin, the precursor to the Tan resin. The Amended Complaint further alleges defendant's misrepresentations induced plaintiff to purchase Century pipe made with the Tan resin and were a proximate cause of the damage to plaintiff's gas distribution system, requiring the premature replacement of all Century pipe in its system.

The second count of fraud is stated in Count IV as "Fraud—Concealment." Plaintiff alleges defendant concealed from the Institute and others, including plaintiff, facts indicating that the Tan resin did not comply with industry and regulatory requirements to be rated as a PE 2306 polyethylene pipe compound and that defendant had a duty to disclose these material facts for reasons of public health and safety. The concealment of these facts allegedly induced plaintiff to purchase Century pipe made with the Tan resin and was a proximate cause of the damage to plaintiff's gas distribution system, requiring the

premature replacement of all Century pipe in its system.

Defendant contends that plaintiff's claim for "Fraud—Concealment" is not a separate cause of action, but rather acts only to toll the statute of limitations. Plaintiff counters that its claim for fraudulent concealment is grounded in SDCL § 20–10–2(3). The statute cited by plaintiff is for deceit, rather than "fraudulent concealment." The Amended Complaint contains a specific count alleging deceit under SDCL § 20–10–1 *et seq.* The Court concludes that "Count IV—Fraud—Concealment" is not a separate cause of action from deceit under South Dakota law. The South Dakota Supreme Court discussed a deceit claim in terms of "fraudulent concealment" in *Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 111–12 (S.D.1992), but the statutory authority for this claim is the deceit statute, SDCL § 20–10–2(3). To the extent plaintiff seeks to establish liability under SDCL §§ 20–10–1 and 20–10–2(3), those claims will be considered in connection with Count IX—Deceit. The Court will also consider plaintiff's allegations regarding fraudulent concealment in determining whether the statute of limitations has been tolled on plaintiff's breach of warranty claims. Thus, only Count III will be treated as a common law cause of action for fraud under South Dakota law.

▮▮▮ Under South Dakota law, the essential elements of fraud are: (1) a representation made as a statement of fact; (2) which was untrue and known to be untrue by the party making it, or else recklessly made; (3) which was made with intent to deceive and for the purpose of inducing the other party to act upon it; (4) which was actually relied upon by the other party; and (5) which thereby induced the other party to act to its injury or damage. *See Stene v. State Farm Mut. Auto. Ins. Co.*, 583 N.W.2d 399, 404 (S.D.1998) (quoting,

*Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991)).

Defendant admits that it represented from 1969 through 1972 that the Tan resin met the requirements for a rating of PE 2306. Thus, the first element is satisfied. The second and third elements, however, are the primary issues in this case. Defendant maintains that the Tan resin did meet the requirements for a rating of PE 2306 at the time it sold the Tan resin to Century for manufacturing the pipe that was eventually purchased from Century by plaintiff from 1970 to 1974. In contrast, plaintiff contends that the Tan resin did not qualify as a PE 2306 compound, which rendered defendant's statements untrue. Both plaintiff and defendant have experts to support their respective positions on the issue of whether the Tan resin qualified as a PE 2306 polyethylene pipe compound suitable for use in underground natural gas distribution systems. Thus, there is a genuine issue of material fact whether the representation that the Tan resin qualified as a PE 2306 compound was untrue.

If it is assumed that the defendant made an untrue statement that the Tan resin qualified as a PE 2306 compound, there is also a genuine issue of material fact for trial regarding whether defendant knew the Tan resin was not a PE 2306 compound or else recklessly made that statement. Plaintiff's experts, Donald E. Duvall, Robert L. Ayres and Richard R. Geoffroy, opined that defendant failed to submit to the Institute the proper test data to receive the PE 2306 rating for the Black resin and that if the appropriate test data had been submitted the Institute would not have found that the Black resin qualified as a PE 2306 compound. Thus, plaintiff's experts opine that defendant fraudulently obtained the PE 2306 rating for the Black resin. Because the PE 2306 rating for the Black resin was relied upon

by defendant in representing that the Tan resin was also a PE 2306 compound and defendant knew the rating for the Black resin was fraudulently obtained, plaintiff's experts conclude that the defendant knew its representation regarding the Tan resin was false. Moreover, plaintiff's experts opine that defendant did not perform sufficient testing of the Tan resin, either before or after the Tan resin was released into the market, to justify its statement that the Tan resin qualified as a PE 2306 compound.

Defendant's expert, Stanley Mruk, disagrees with plaintiff's experts' opinions that the Tan resin did not meet the requirements for a PE 2306 rating. Mruk states that the test data produced by defendant supports defendant's representations that the Tan resin qualified as a PE 2306 material. While admitting that certain data was not submitted to the Institute for purposes of applying for the PE 2306 rating for the Black resin, Mruk states there is no evidence that defendant withheld any such information for any improper purpose.

The Court concludes that there are genuine issues of material fact regarding defendant's rationale and motive for failing to provide certain test results to the Institute in defendant's application for a PE 2306 rating for the Black resin, which rating was heavily relied upon by defendant in making its representation that the Tan resin qualified as a PE 2306 compound. The evidence of an intent to deceive and knowledge of falsity in this case is far less compelling than the evidence presented in the case of *Brookings Mun. Util., Inc. v. Amoco Chem. Co.,* 103 F.Supp.2d 1169, 1178–79 (D.S.D.2000), wherein this Court denied the defendant's summary judgment motion. While the evidence of intent to deceive is weak, the existence of genuine issues of material fact preclude the entry of summary judgment on plaintiff's fraud claim as stated in Count III of the Amended Complaint.

## B. *Deceit and Deceptive Trade Practices*

Deceit, as alleged in Count IX of the Amended Complaint, is a statutory cause of action under which "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." SDCL § 20–10–1. "A deceit within the meaning of § 20–10–1 is either: (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) The suppression of a fact by one who is bound to disclose it, or who gives information or other facts which are likely to mislead for want of communication of that fact; or (4) A promise made without any intention of performing." SDCL § 20–10–2.

South Dakota's statutes on Deceptive Trade Practices and Consumer Protection, SDCL Chapter 37–24, provide a cause of action for damages to any person who claims to have been adversely affected by any act or practice declared to be deceptive under SDCL § 37–24–6, for the recovery of actual damages suffered as a result of the act or practice. SDCL § 37–24–31. Under § 37–24–6, it is a deceptive act or practice to "[k]nowingly and intentionally act, use or employ any deceptive act or practice, fraud, false pretense, false promises or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived or damaged thereby."

Both of these claims, similar to plaintiff's claim of fraud, require proof of an intentional misrepresentation or concealment of

a fact·on which plaintiff relied and that caused an injury to plaintiff. As discussed above, there are genuine issues of material fact regarding whether defendant's representation that the Tan resin qualified as a PE 2306 compound was false and whether defendant knew that representation was false. Thus, summary judgment must also be denied on plaintiff's claims of deceit and deceptive trade practices.

## C. *Breach of Warranty Claims*

■ Defendant claims that plaintiff's breach of warranty claims are barred by the applicable statute of limitations. Breach of warranty claims under the Uniform Commercial Code "must be commenced within four years after the cause of action has accrued." SDCL § 57A–2–725(1). Under § 2–725(2) of the Uniform Commercial Code, "[a] cause of action accrues when the breach ·occurs, regardless of the aggrieved party's lack of knowledge of the breach." SDCL § 57A–2–725(2). Under the circumstances of this case, the alleged breach of warranty occurred when tender of delivery was made. *See id.* The Amended Complaint alleges that the last delivery of pipe was made in 1974, which means that the four-year statute of limitations on plaintiff's breach of warranty claims expired sometime in 1978. Thus, to avoid the statute of limitations bar, plaintiff must establish that the statute of limitations was tolled.

■ Under South Dakota law, a defendant may be equitably estopped from raising the statute of limitations as a defense to a warranty claim. *See L.R. Foy Constr. v. S.D. State Cement Plant,* 399 N.W.2d 340, 343–46 (S.D.1987). In order to meet the elements of equitable estoppel, plaintiff must show: (1) that defendant made a false representation or concealment of material fact; (2) that plaintiff was without knowledge of the real facts; (3) that defendant made the representation or

concealment with the intention that it should be acted upon; and (4) that plaintiff relied upon the misrepresentation or concealment to its prejudice or injury. *See id.* at 344 (citation omitted). Plaintiff has alleged that defendant made misrepresentations and concealed facts about flaws in the pipe made from Tan resin. At the motion to dismiss stage, the Court held that these allegations were sufficient to support a fair inference that defendant's conduct prevented plaintiff from filing its complaint until 1997, after the statute of limitations had run. Accordingly, plaintiff's breach of warranty claims were not dismissed under Rule 12(b)(6). Now that plaintiff has conducted discovery, however, the issue is whether there is any genuine issue of material fact that defendant fraudulently concealed facts that would equitably estop defendant from asserting the statute of limitations defense. *See Strassburg v. Citizens State Bank,* 581 N.W.2d 510, 513 (S.D.1998) (explaining that where defendant asserts the statute of limitations defense and establishes the case was brought beyond the statutory period, plaintiff then has the burden to show the existence of material facts, e.g., fraud or fraudulent concealment, to avoid the statute of limitations).

The South Dakota Supreme Court explained that in the context of tolling a statute of limitations "fraudulent concealment applies not when an action remains merely undiscovered, but when actionable conduct or injury has been concealed by deceptive act or artifice. Without a confidential or fiduciary relationship, fraudulent concealment consists of 'some affirmative act or conduct on the part of the defendant designed to prevent, and which does prevent, the discovery of the cause of action.' " *Strassburg,* 581 N.W.2d at 515 (quoting *Koenig v. Lambert,* 527 N.W.2d 903, 905–06 (S.D.1995), *overruled on other grounds, Stratmeyer v. Stratmeyer,* 567 N.W.2d 220

(S.D.1997)). If plaintiff establishes fraudulent concealment, the statute of limitations will be tolled until the claim is discovered or, with reasonable diligence it might have been discovered. *See id.* In this case, plaintiff has not established that there was a fiduciary or confidential relationship between it and defendant. Thus, to show fraudulent concealment plaintiff must establish an affirmative act or conduct by defendant to prevent discovery of plaintiff's breach of warranty claims.

Plaintiff contends that defendant's internal correspondence shows that it became aware of several problems with the Tan resin in 1971 and 1972. Defendant received reports from existing and potential customers, plaintiff alleges, explaining problems with pipe made from the Tan resin including extrusion difficulties and the results of independent testing that the Tan resin was inferior to DuPont's Aldyl A in terms of stress crack resistance. Despite possession of this information, plaintiff contends that defendant withdrew the listing with the Institute of the Black resin because it was "obsolete" without informing the Institute, the industry or plaintiff that pipe made with either the Black or Tan resin was defective and potentially dangerous. Plaintiff further alleges defendant continued to conceal that the Tan resin was dangerous and defective by obtaining a release and settlement agreement in prior litigation concerning the Tan resin requiring the plaintiff in that litigation to return all documents and depositions produced by defendant.

With the possible exception of the conduct in the prior litigation, the other alleged acts of the defendant in concealing material facts by plaintiff amount to no more than silence regarding any potential problems with the Tan resin. Such silence is surely not commendable, but plaintiff needs more to show an affirmative act or conduct. As to the defendant's conduct in prior litigation, the Court excluded the settlement agreement for purposes of the summary judgment motion based on Federal Rules of Evidence 402 and 403 because there is insufficient evidence in the summary judgment record to determine whether this settlement agreement is relevant under Rule 401. The settlement agreement was not excluded under Federal Rules of Evidence 408, however, because it was not offered "to prove liability for or invalidity of the claim [in dispute] or its amount." Fed.R.Evid. 408. Even if the settlement agreement was allowed as evidence on the summary judgment motion, plaintiff has not established what the contents were of any of the documents returned to defendant or how those documents would have allowed plaintiff to discover the breach of warranty claims alleged in the Amended Complaint. Moreover, plaintiff has not established that even if the plaintiff in that prior litigation had retained possession of the documents that plaintiff would have been notified of any defects in pipe made from the Tan resin, resulting in the discovery of plaintiff's breach of warranty claims. Thus, plaintiff has not established a genuine issue of material fact regarding an affirmative act or conduct by defendant to prevent the discovery of plaintiff's breach of warranty claims. Defendant is entitled to summary judgment on plaintiff's breach of warranty claims because those claims are barred by the four-year statute of limitations in SDCL § 57A–2–725(1).

### D. *Unjust Enrichment and Restitution*

Because restitution is an equitable remedy, it is generally unavailable when there exists an adequate remedy at law. *See Southtown Plumbing, Inc. v. Har–Ned Lumber Co.,* 493 N.W.2d 137, 140 (Minn.App.1992); *see also Holzworth v. Roth,* 78 S.D. 287, 101 N.W.2d 393, 395

(1960) ("[W]here the action is legal in nature, the absence of an adequate remedy at law is necessary to confer equitable jurisdiction."). The action in this case is clearly legal in nature in that plaintiff is seeking a judgment against defendant imposing a personal liability upon the defendant to pay a sum of money. *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 714, 151 L.Ed.2d 635 (2002). In light of the Court's holding above that plaintiff's claims for fraud, deceit and deceptive trade practices survive summary judgment, there exists an adequate remedy at law to redress plaintiff's claims. Thus, summary judgment will be granted in favor of defendant on plaintiff's claim for restitution.

### CONCLUSION

For the reasons stated above, summary judgment will be entered in favor of defendant on plaintiff's breach of warranty claims as stated in Counts V, VI and VII in the Amended Complaint because they are barred by the statute of limitations and there is no genuine issue of material fact on the issue of fraudulent concealment to toll the statute of limitations. Summary judgment will also be granted as to plaintiff's claim for restitution as stated in Count VIII because plaintiff has an adequate remedy at law to redress its claims. Defendant's motion for summary judgment on plaintiff's fraud, deceit and deceptive trade practices claims, as stated in Counts IV, IX and X of the Amended Complaint, will be denied. As explained above, plaintiff's claim for concealment of fraud as stated in Count IV of the Amended Complaint will be consolidated with plaintiff's deceit claim in Count IX. The Court previously dismissed Counts I and II. Thus, the counts remaining for trial are plaintiff's claims of fraud (Count III), deceit (Counts IV and IX), and deceptive trade practices (Count X). Accordingly,

IT IS ORDERED:

1. That defendant's Motion for Summary Judgment, Doc. 56, is granted as to plaintiff's breach of warranty and restitution claims as stated in Counts V, VI, VII, and VIII in the Amended Complaint and is denied as to plaintiff's claims for fraud, deceit and deceptive trade practices as stated in Counts III, IX, X of the Amended Complaint. The allegations stated in Count IV regarding concealment of fraud are consolidated with plaintiff's deceit claim stated in Count IX of the Amended Complaint.

2. That defendant's Motion to Exclude Plaintiff's Settlement Agreement, Doc. 64, is granted as to it being considered in the Motion for Summary Judgment. The Court reserves ruling for trial if some additional information regarding the litigation which was the basis for the settlement agreement is provided at trial, but on the basis of the current record the settlement agreement will not be received in evidence at trial.

3. That defendant's Motion to Strike and Exclude Plaintiff's Expert Report, Doc. 65, is denied. Defendant may, however, take a supplemental deposition of Donald Duvall if so desired.

4. That plaintiff's Motion for Leave to File Corrected Statement, Doc. 70, is granted.

5. That plaintiff's Motion to Strike and Exclude NTSB Report, Doc. 71, is granted for purposes of the summary judgment motion.

6. That defendant's Motion to Compel, Doc. 50, is denied as moot.