**Kenneth FREDIN, Appellant,**

v.

**FARMERS STATE BANK OF MOUNTAIN LAKE, Minnesota, et al., Respondents.**

No. C7–85–1763.

Court of Appeals of Minnesota.

April 1, 1986.

James Brian O'Leary, O'Leary & Moritz, Springfield, for appellant.

L. Douglas Storey, Muir, Meyer, Storey, Simons & Costello, Mountain Lake, for respondents.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Kenneth Fredin brought this action against respondent Farmers State Bank of Mountain Lake (Bank) and respondent James Kremmin to collect rent due on farm land that he rented to Kremmin. The trial court awarded Fredin judgment against Kremmin in the amount of $9,500 plus interest and dismissed Fredin's claim against the Bank. Following a denial of Fredin's post-trial motion, Fredin appeals. We affirm.

## FACTS

James Kremmin is Kenneth Fredin's nephew. For a number of years, Fredin has leased and farmed land owned by Ray Bowers. In 1984, Fredin asked Kremmin if he wanted to sublease and farm the land for the 1984 crop year.

The terms of the lease between Kremmin and Fredin were the same as the terms that Fredin had with Bowers. The total annual rent was $16,000—$6,500 payable on March 1, 1984, and $9,500 payable on December 1, 1984. Bowers had a perfected security interest in the 1984 crop from the land.

Before agreeing to the lease agreement, Kremmin discussed the lease with James Sneer, the president of the Bank. Kremmin and the Bank did a cash flow analysis with figures provided by Kremmin. The Bank determined that Kremmin could profitably rent and farm the land and it agreed to advance Kremmin the first rent payment due on March 1, 1984. Subsequently, Kremmin entered into the lease with Fredin and paid him $6,500. In turn, Fredin paid Bowers the rent.

Sometime around the time that the lease was entered into, Fredin saw Sneer in a local cafe and they discussed the lease. Fredin admits that the Bank never agreed to ensure the second rent payment. Nonetheless, Fredin presumed he would get paid based on his conversation with Sneer and the Bank's other actions that indicated it approved the lease.

During the 1984 crop year, Kremmin planted crops on part of the Bowers land and set aside the remainder of the acreage as part of the United States Department of Agriculture's Payment-in-Kind program. Unfortunately, Kremmin's yield on his 1984 crop was not as high as he anticipated. After harvesting, the crops were sealed at local elevators and the local Agricultural Service Center (ASC) office issued checks jointly to Kremmin and the Bank for the total amount of approximately $37,000.

Subsequently, Kremmin met with Sneer at the Bank. They endorsed the checks and deposited them. Kremmin then wrote a check to the Bank for approximately $32,-000 in partial payment of his indebtedness to the Bank. With the remaining balance of about $5,000, he paid his gas and feed bills. Kremmin testified that when he asked Sneer about paying Fredin, Sneer told him that they were coming up short and they would have to wait and see how things worked out. Sneer testified that he did not attempt to prevent Kremmin from choosing which debts to pay out of the crop proceeds.

Apparently, Kremmin asked the Bank to advance him $9,500 so he could make the December 1, 1984 rent payment. The Bank denied Kremmin's request because he was insolvent, and it has not made any other loans to Kremmin. Kremmin has not made any payments on his indebtedness to the Bank since November 15, 1984. Kremmin still owes the Bank approximately $21,000.

When Fredin realized that Kremmin could not pay the rent, he paid the rent to Bowers out of his own funds. On December 5, 1984, Fredin and Kremmin executed a written lease agreement, and Fredin filed a financing statement in the Cottonwood County Recorder's office asserting a security interest on all the crops grown on the Bowers land in 1984.

Fredin commenced this action against both the Bank and Kremmin. Fredin alleged that he has a security interest in the 1984 crop from the Bowers land and that the security interest is superior to the Bank's. He further alleged that the Bank holds proceeds of the 1984 crop which should be used to make the second rent payment.

After a short trial to the court, the trial court found that the Bank knew that the second half of the rent was due in December, but it did not represent to Fredin or Kremmin that it would advance the December rent payment. The trial court further found that the Bank did not have a security interest in the crops raised by Kremmin on the Bowers land and that Kremmin voluntarily paid the Bank out of the 1984 crop proceeds. The trial court dismissed Fredin's claim against the Bank and awarded Fredin judgment against Kremmin in the amount of $9,500 plus interest.

### ISSUE
Did the trial court err in failing to award Fredin judgment against the Bank?

### ANALYSIS
Fredin argues that he has an equitable lien on the 1984 crop proceeds.[1]

---

1. Fredin does not claim that the financing state-    ment filed on December 5, 1984, created a valid

■ An equitable lien arises in an equity proceeding when a person is allowed to reach the property of another and hold it as security for a claim on the ground that otherwise the latter would be unjustly enriched. *Borsgard v. Elverum,* 248 Minn. 405, 414, 80 N.W.2d 604, 610 (1957) (quoting Restatement of Restitution § 161, at 650 (1937)). An equitable lien is essentially a form of a constructive trust. D. Dobbs, Handbook on the Law of Remedies § 4.3, at 249 (1973). A court may impose a constructive trust when there is clear and convincing evidence that such imposition is justified to prevent unjust enrichment. *In re Estate of Eriksen,* 337 N.W.2d 671, 674 (Minn.1983) (citing *Knox v. Knox,* 222 Minn. 477, 481, 25 N.W.2d 225, 228 (1946)). A constructive trust may arise in favor of a person equitably entitled to property when legal title to the property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship. *Wright v. Wright,* 311 N.W.2d 484, 485 (Minn.1981).

The facts in this case do not fall into any of the situations where constructive trusts usually arise. Further, the evidence does not clearly and convincingly show that the Bank is holding property to which Fredin is equitably entitled in order to prevent unjust enrichment. We do not find that imposing an equitable lien is appropriate in this case.

We agree with the trial court that Fredin had a number of ways through which he could have ensured payment of the rent. He could have entered into a crop share rental agreement with Kremmin, or perfected a security interest in the crops, or sought a guarantee from the Bank.

■ Fredin claims that he took no action to ensure the rent payment, because he relied on the Bank's actions which indicated to him that the Bank would finance the December rent payment. The trial court found that the Bank did not make any representation to Fredin or Kremmin that

it would advance the second rent payment. This finding is not clearly erroneous. *See* Minn.R.Civ.P. 52.01. The record indicates that the Bank reviewed Kremmin's financial status and apparently determined that Kremmin would be able to profitably lease and farm the Bowers land. Based on this determination, it advanced the first rent payment. We do not believe that these actions indicate that the Bank represented to Fredin or Kremmin that it would ensure payment of the rent.

Fredin also argues that the Bank should be estopped from denying Kremmin the right to pay the second rent payment. The trial court found that Kremmin voluntarily paid the Bank the $32,000. This finding is not clearly erroneous. *See* Minn.R.Civ.P. 52.01. Our review of the record does not reveal any evidence that the Bank prevented Kremmin from making the rent payment. It appears that Kremmin simply did not have sufficient funds to pay all his debts.

■ Fredin finally argues that the Bank wrongfully withheld funds belonging to Kremmin. Fredin relies on the fact that the ASC issued the checks jointly to Kremmin and the Bank.

The Bank had a perfected security interest in the crops that grew on Kremmin's own land, but it did not have an interest in the crops from the Bowers land. Some of the crops from Kremmin's own land and crops from the rented land were commingled. This commingling explains to a certain extent why some of the checks were issued jointly. There is no evidence in the record, however, explaining why joint checks were issued for the crops that were not commingled.

This lack of evidence does not compel a finding that the Bank wrongfully withheld funds belonging to Kremmin. Both Kremmin and Sneer testified that when Kremmin brought the checks to the Bank, they both endorsed the checks and Kremmin deposited the checks into his account. Kremmin then proceeded to pay the Bank

security interest in Kremmin's crops.

the $32,000. The fact that Kremmin needed the Bank's endorsement on the checks probably did influence his decision regarding which debts to pay with the crop proceeds. Nonetheless, the evidence fails to show that the Bank exerted any unlawful or coercive pressure on Kremmin that would give rise to a claim that the Bank wrongfully withheld Kremmin's funds.

Although we sympathize with Fredin's loss arising from Kremmin's financial troubles, we are aware of no equitable theory which would entitle Fredin to judgment against the Bank.

### DECISION

The trial court did not err in finding that Fredin is not entitled to an equitable lien on the crops. Nor did the trial court err in denying Fredin's claims of estoppel and wrongful withholding of funds.

Affirmed.