MON–RAY, INC., Respondent,

v.

GRANITE RE, INC., an Oklahoma corporation, Respondent,

JayLark, Inc., Defendant,

Metropolitan Airports Commission, Appellant.

and

Erickson Plumbing, Heating and Cooling, Inc., Respondent,

v.

Granite Re, Inc., an Oklahoma corporation, Respondent,

JayLark, Inc., Defendant,

Metropolitan Airports Commission, Appellant.

No. A03–660.

Court of Appeals of Minnesota.

April 7, 2004.

Aaron A. Dean, Dean B. Thomson, Fabyanske, Westra & Hart, P.A., Minneapolis, MN; and Ned E. Ostenso, Hopkins, MN, for respondents Mon–Ray, Inc. and Erickson Plumbing, Heating and Cooling, Inc.

David H. Gregerson, Joseph A. Nilan, Christine A. Longe, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, MN, for respondent Granite Re, Inc.

Jerome A. Miranowski, Faegre & Benson, LLP, Minneapolis, MN, for appellant.

Robert L. Magrini, Hayes Magrini & Gatewood, Oklahoma City, OK; and William R. Miller, Minneapolis, MN, for amici curiae.

Considered and decided by SCHUMACHER, Presiding Judge; WILLIS, Judge; and WRIGHT, Judge.

## OPINION

WILLIS, Judge.

Appellant is a public corporation that hires general contractors for work on a sound-insulation program that appellant developed and operates. Appellant challenges the district court's grant of summary judgment to respondent subcontractors, arguing that the district court erred by determining that a forfeiture provision in appellant's contracts with a general contractor did not "bind" or "apply to" the subcontractors or the respondent surety because they are not parties to the contracts and that, therefore, appellant is not entitled to $44,000 that was forfeited by the general contractor. Both appellant and the surety challenge the district court's determination that the subcontractors are entitled to the money, maintaining that the subcontractors are not entitled to equitable relief because they failed to timely pursue their available statutory remedies. And appellant argues that because

the $44,000 was forfeited by the general subcontractor, the surety is not entitled to the money under a theory of equitable subrogation. Because we agree with appellant, we reverse.

## FACTS

In response to complaints about airport noise in areas near the Minneapolis/St. Paul International Airport, appellant Metropolitan Airport Commission (MAC) developed and operates the MSP Part 150 Sound Insulation Program, which provides sound insulation for homes and schools in affected areas. Under this program, MAC has sound-insulated approximately 7,200 homes at a cost of $206 million. MAC hires general contractors to perform the sound-insulation work; those contractors then may hire subcontractors. MAC enters into a separate contract with a general contractor for each home and school in the program.

JayLark, Inc. was a general contractor that participated in the program, and it subcontracted much of the work to various subcontractors, including respondents Mon–Ray, Inc. and Erickson Plumbing, Heating & Cooling, Inc. The contracts between JayLark and MAC include a provision that specifies that "any and all remaining payments on the affected Contract" would be forfeited by JayLark if it failed to provide final documents or complete work, including warranty work, within six months after substantial completion of the contract.[1] Respondent Granite Re, Inc. was JayLark's surety and provided performance bonds and payment bonds, as required both by MAC's contracts with JayLark and by

Minn.Stat. § 574.26 (2002), to ensure that the work was completed and that subcontractors and suppliers were paid for their work.

In early 2002, JayLark stopped performing on its contracts, and its owners declared bankruptcy. Mon–Ray and Erickson completed the work on the homes for which they had been hired and subsequently filed claims against the payment bonds provided by Granite. Erickson filed 18 claims against the bonds, totaling approximately $185,345; Granite paid Erickson approximately $29,624 on three of Erickson's claims and denied the rest as untimely. Mon–Ray filed 12 claims against the bonds, seeking approximately $67,742; in June 2002, Granite paid Mon–Ray $28,337 for its claims against four bonds, determined that three claims were untimely, and continued to evaluate the five remaining claims. In September 2002, Granite entered an agreement with Mon–Ray to settle the five claims for $25,000; in the settlement agreement, both Granite and Mon–Ray purported to reserve their rights to assert claims to the approximately $44,000 that JayLark forfeited to MAC.

Mon–Ray and Erickson filed separate complaints, asserting the same causes of action against the same parties; the two cases were consolidated. Mon–Ray and Erickson asserted (1) breach of contract claims against JayLark; (2) payment-bond claims under Minn.Stat. § 574 against Granite for amounts that had not yet been paid under the bonds; and (3) equitable claims of unjust enrichment and constructive trust against MAC to recover the

---

1. The "final documents" consist of inspection reports, a certificate of final acceptance, a withholding affidavit for contractors, the consent of the surety to final payment, the contractor's affidavit of payment of debts and claims form, remaining change orders, certi- fied payroll for any work completed after substantial completion of the contract work, and mechanical/insulation correction forms signed by the contractor and project manager, if applicable.

$44,000 forfeited by JayLark because of its default on its contracts with MAC. Granite also asserted a cross-claim against MAC for the $44,000, maintaining that Granite was entitled to the money under a theory of equitable subrogation. Mon–Ray obtained a default judgment against JayLark for $51,623; Erickson moved for a default judgment for $186,033 against JayLark, but the district court has not acted on that motion.

All parties brought cross-motions for summary judgment to determine the claims to the approximately $44,000 forfeited by JayLark. On May 9, 2003, the district court granted Mon–Ray's and Erickson's motions for summary judgment and awarded $10,307 to Mon–Ray and the remaining $33,699 to Erickson. MAC's and Granite's motions for summary judgment were denied. MAC appealed the order, arguing that it is entitled to keep the $44,000 because of the forfeiture provision in its contracts with JayLark, and Granite filed a notice of review that contests the rights of Mon–Ray and Erickson to the $44,000.

## ISSUES

I. Are the subcontractors entitled to equitable relief in the form of payment to them of the funds that JayLark forfeited?

II. Is the surety entitled, under a theory of equitable subrogation, to the funds that JayLark forfeited?

## ANALYSIS

Summary judgment is appropriate when the pleadings, affidavits, and other documents before the court show that "there is no genuine issue as to any material fact" and that either party "is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

### I.

The district court decided that Mon–Ray and Erickson were entitled to the $44,000, finding that (1) MAC was not entitled to the money because Mon–Ray and Erickson were not parties to the contracts between JayLark and MAC and, thus, the forfeiture provision did not "bind" them and (2) the subcontractors were entitled to the $44,000 "under the doctrine of equitable lien or under their alternative theory of unjust enrichment."

 MAC argues first that the district court erred by determining that MAC was not entitled to the $44,000 because the forfeiture provision did not "bind" the subcontractors. When a contract contains a forfeiture provision, the provision, while strictly construed, is enforceable if it is a clear expression or manifestation of the parties' intent. *Naftalin v. John Wood Co.,* 263 Minn. 135, 147–48, 116 N.W.2d 91, 100 (1962). Although courts may construe an ambiguous contract to avoid a forfeiture, such an interpretation may not be given if "such an intent is manifest in clear and unambiguous language." *Thommes v. Milwaukee Ins. Co.,* 641 N.W.2d 877, 883 (Minn.2002). The subcontractors do not argue that the forfeiture provision is unenforceable as it applies to JayLark; rather, they argue that MAC is not entitled to the $44,000 because the forfeiture provision does not "affect" the subcontractors.

MAC's contracts with JayLark, like its contracts with other general contractors, require JayLark to close out each contract by providing MAC with final documents and to complete work, including warranty work, within six months of substantial

completion of the contract. Section 00700–1.27(D) of the contracts provides:

> If the Contractor should fail to provide final documents as outlined in Section 01700—"Contract Closeout" within six (6) months following Substantial Completion of any SIP Contract, MAC shall terminate the Contract due to non-response and the Contractor shall forfeit any and all remaining payments on the affected Contract.

Also, Section 01700–1.02(E) provides:

> If the Contractor fails to provide final documents, as outlined in this Section, or complete work including warranty work, within six months following Substantial Completion of any MSP Part 150 Sound Insulation Program Contract, MAC shall terminate the Contract due to non-response and the Contractor shall forfeit any and all remaining payments on the affected Contract.

MAC contends that, as a public corporation, it is obligated to ensure that its contractors comply with the law and that by requiring contractors to provide, as part of the final documents, a "Withholding Affidavit for Contractors," which is required by law to ensure that contractors have complied with state and federal wage and tax withholding laws, the forfeiture provision is designed to ensure contractor compliance with the law. MAC further maintains that the forfeiture provision is an essential part of its program because it allows MAC to remain current in closing out completed contracts, results in cost savings, and reduces demand on staff time. And because it is undisputed that JayLark failed to provide the documents required by the contracts, MAC contends that JayLark forfeited "any and all remaining payments" and that MAC is entitled to keep them.

The contracts clearly and unambiguously provide that if JayLark fails to provide final documents or to complete work, including warranty work, within six months after substantial completion of the contract, JayLark forfeits "any and all remaining payments" on the affected contract. Because it is undisputed that JayLark did not comply with its obligations under this provision, JayLark clearly forfeited its right to "any and all remaining payments" under the contracts. *See Naftalin*, 263 Minn. at 147–48, 116 N.W.2d at 100 (holding that when a contract contains a forfeiture provision, the forfeiture, while strictly construed, is enforceable if it is a clear expression or manifestation of the parties' intent). The district court determined that it "cannot even consider awarding the $44,000 to the MAC in compensation for the time the MAC allegedly spent on [completing the close-out] paperwork." But MAC's argument is that it is entitled to the money, not as compensation for completing JayLark's paperwork, but rather because JayLark forfeited its right to the money by failing to comply with its contracts with MAC.

■ We conclude that the district court erred by determining that MAC was not entitled to the $44,000 under the forfeiture provision in its contracts with JayLark on the ground that the forfeiture provision did not "bind" the subcontractors. Because, as a general rule, nonparties to a contract acquire no rights or obligations under it, the fact that the forfeiture provision does not "bind" the subcontractors does not give them a right to the $44,000. *See N. Nat'l Bank of Bemidji v. N. Minn. Nat'l Bank of Duluth*, 244 Minn. 202, 208, 70 N.W.2d 118, 123 (1955) (holding that the general rule that nonparties to a contract acquire no rights under it is subject to exception of third-party beneficiary contracts).

■ MAC next argues that the subcontractors are not entitled to the $44,000 under the theories of either unjust enrichment or equitable lien. We agree. The district court determined that

> [w]hether under the doctrine of equitable lien or under their alternative theory of unjust enrichment, the subcontractors have a prior claim to what retainages are available. As Mon–Ray has settled with Granite as to those bond claims which Granite denied, Mon–Ray has no remedies at law available. Therefore, a remedy in equity is appropriate.

■ To establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled and that the circumstances are such that it would be unjust for that person to retain the benefit. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn.1996). "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn.1981). Unjust enrichment may be founded on failure of consideration, fraud, or mistake, or "situations where it would be morally wrong for one party to enrich himself at the expense of another." *Holman v. CPT Corp.*, 457 N.W.2d 740, 745 (Minn.App.1990) (quoting *Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn.App. 1984)). An equitable lien is essentially a constructive trust and may be imposed where "there is clear and convincing evidence that such imposition is justified to prevent unjust enrichment." *Fredin v. Farmers State Bank of Mountain Lake*, 384 N.W.2d 532, 535 (Minn.App.1986).

Although the district court stated that Mon–Ray did not have an available remedy at law because it reached a settlement with Granite on the bond claims that were denied, it is clear that both Mon–Ray and Erickson did have a legal remedy under the payment-bond statute and that if they had timely submitted all of their payment-bond claims, they would have been paid in full. And because the subcontractors failed to pursue their available legal remedy, we conclude that they cannot now claim that they are entitled to equitable relief in the form of payment by MAC for the work that they have not been paid for under the payment bonds. *See Southtown Plumbing, Inc. v. Har–Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn.App.1992) (holding that subcontractors do not have a claim for unjust enrichment when they fail to pursue their available statutory remedy).

■ Here, Mon–Ray and Erickson did not protect their rights because, for reasons not apparent from the record, they did not timely submit all of their payment-bond claims under Minn.Stat. § 574.31, subd. 2(a) (2002). *See ServiceMaster*, 544 N.W.2d at 306 (holding that the mechanic's lien statute, which is akin to the public-works payment-bond statute, provides contractors with a "sure remedy for getting paid but it requires compliance with strict time restrictions on the part of the contractor to protect its rights"). And if a contractor elects not to pursue the legal remedy available under the statute, the contractor is not entitled to equitable relief, absent compelling circumstances. *Id.* Although Mon–Ray and Erickson argue that they should be entitled to the $44,000 because MAC has received the benefit of fully completed projects, they cite no compelling circumstances warranting relief.

Mon–Ray and Erickson argue that a 1995 amendment to Minn.Stat. § 514.13

(2002), the mechanic's-lien statute, which provides that "the rights granted by this chapter are nonexclusive," "eviscerate[s]" the relevant caselaw. But in *ServiceMaster*, which was decided in 1996, the supreme court held that a party cannot recover under an equitable theory if it fails to pursue its available and adequate legal remedy. *Id.* And we note that, in any event, the payment-bond statute contains no language paralleling the 1995 amendment to the mechanic's-lien statute.

Further, *Twin City Construction Co. of Fargo, N.D. v. ITT Industrial Credit Co.*, which Mon–Ray and Erickson cite for the proposition that they are entitled to damages for unjust enrichment, is distinguishable. 358 N.W.2d 716, 719 (Minn.App. 1984). *Twin City Construction* held that a lender was unjustly enriched by its refusal to make final payment under a construction contract after completion of work by a contractor and that, therefore, the contractor was entitled to recover on its claim of unjust enrichment as a matter of law. *Id.* at 717–19. But unlike the contractor in *Twin City Construction*, which entered into an agreement by which it gave up its mechanic's lien and "was to complete the construction project without any recourse," nothing precluded Mon–Ray and Erickson from filing claims under the payment-bond statute. *Id.* at 717. Thus, we conclude that because Mon–Ray and Erickson had an available and adequate remedy at law that they failed to timely pursue, the district court erred by determining that they were entitled to the $44,000 "[w]hether under the doctrine of equitable lien or under their alternative theory of unjust enrichment."

## II.

▮ Granite also asserts that the forfeiture provision in the contracts between MAC and JayLark cannot be enforced against Granite because it was not a party to the contracts between JayLark and MAC. We agree. But, as previously stated, we conclude that because, as a general rule, nonparties to a contract acquire no rights under it, the fact that the forfeiture provision does not "bind" or "apply to" the surety does not affect MAC's entitlement to the $44,000; as a nonparty, no money was due to Granite under the contracts between MAC and JayLark. *See N. Nat'l Bank of Bemidji*, 244 Minn. at 208, 70 N.W.2d at 123 (holding that, as a general rule, nonparties to a contract acquire no rights under it).

▮ Because JayLark failed to complete performance of its contracts, Granite paid, under its payment bonds, the claims submitted by Mon–Ray and Erickson that were timely and also hired, under its performance bonds, a substitute general contractor to complete the work. Granite maintains that because it paid under its payment bonds, by application of the doctrine of equitable subrogation, it is entitled to the $44,000.

▮ Under the doctrine of equitable subrogation, "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." *Am. Sur. Co. of New York v. Bethlehem Nat. Bank of Bethlehem, Pa.*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941) (citations omitted). A surety has an equitable right of subrogation to contractor funds retained by a project owner when the surety pays the debts of the contractor to subcontractors under a payment bond. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 141–42, 83 S.Ct. 232, 237, 9 L.Ed.2d 190 (1962). Thus, Granite asserts, because it paid Mon–Ray and Erickson under its payment-bond obligation, Granite is entitled to $44,000 from MAC. In *Pearlman,* the con-

tract between the project owner and the contractor provided that, until the project was completed, the project owner could retain and hold a percentage of the monthly payments due the contractor. 371 U.S. at 133–34, 83 S.Ct. at 233. And the Supreme Court determined that, upon final completion of the project, the funds held by the project owner "plainly belonged to someone else." *Id.* at 134, 83 S.Ct. at 233. We conclude that *Pearlman* is distinguishable, however. Here, JayLark forfeited the $44,000 by not complying with MAC's contracts. And because JayLark is not due any money under its contracts with MAC, there are no contract retainages owed to JayLark to which Granite can assert a right. Thus, we conclude that the money does not "belong" to a party other than MAC and that Granite does not have a right to the money under the doctrine of equitable subrogation.

Granite and the amici[2] further argue that by fulfilling its performance-bond obligation, Granite is entitled to $44,000 from MAC. They maintain that when a contractor defaults on a contract, a performance-bond surety has the right either (1) to direct the owner to use the remaining contract proceeds to complete the work or (2) to perform by completing the project. Granite cites *District of Columbia v. Aetna Insurance Co.* for the proposition that it is entitled to $44,000 from MAC because (1) by performing under its performance bond and completing the work, Granite is subrogated to all of MAC's rights and remedies against JayLark, (2) one of MAC's rights is the right of set-off, which gives MAC the right to set off excess completion costs on any one contract against "sums otherwise owed JayLark" on any other contract, and (3) Granite, by

completing JayLark's projects, is thus entitled any contract proceeds that MAC owes JayLark. 462 A.2d 428, 432 (D.C. 1983) (holding that performance-bond surety on a public-works project, upon default of the contractor and full performance by the surety, is subrogated to the rights and remedies, including set off, against the contractor that the project owner would have had if it had completed the project itself).

But the $44,000 is money forfeited by JayLark under a forfeiture provision and is not "remaining" contract proceeds. Thus, because MAC owes JayLark no money under the contracts, we conclude that Granite is not entitled to the $44,000 under the doctrine of equitable subrogation.

### DECISION

Because JayLark forfeited approximately $44,000 under a provision in its contracts with MAC, the district court erred by determining that MAC was not entitled to the money on the ground that the forfeiture provision did not "bind" or "apply to" Mon–Ray, Erickson, and Granite. Mon–Ray and Erickson are not entitled to equitable relief in the form of recovery from MAC because they failed to timely avail themselves of an available legal remedy. And because the money was forfeited by JayLark and was not remaining contract proceeds owed to JayLark, Granite is not entitled to the money under the theory of equitable subrogation.

**Reversed.**

ROBERT H. SCHUMACHER, Judge (concurring in part, dissenting in part).

While I concur with the majority's analysis regarding the subcontractors' equita-

2. On June 30, 2003, this court granted National American Insurance Company, Mid–Continent Casualty Company, and Victore In-surance Company leave to file a brief as amici curiae.

ble claims, I respectfully dissent with regard to the analysis of the forfeiture clause. I believe that MAC is not entitled to the $44,000 because the forfeiture provision in its contract with JayLark does not apply to the surety and the subcontractors. Where a contract clearly and expressly provides for forfeiture, the provision will be strictly construed. *Naftalin v. John Wood Co.*, 263 Minn. 135, 147–48, 116 N.W.2d 91, 100 (1962).

Here, the forfeiture provision clearly provides that "the Contractor" is the only party subject to its terms. Because it is undisputed that JayLark is "the Contractor," I conclude that this court should not allow MAC to extend the reach of its forfeiture provision to include the subcontractors and the surety, which are nonparties to the contract between MAC and JayLark. As nonparties to the contract, the forfeiture provision is not a clear expression or manifestation of their intent and, thus, is unenforceable as applied to them. *See id.* (holding that forfeiture is enforceable if it is clear expression of parties' intent).

Further, forfeitures are not favored and will not be enforced when great injustice would be done. *Hideaway, Inc. v. Gambit Invs., Inc.*, 386 N.W.2d 822, 824 (Minn. App.1986). Here, I believe that it is unjust that MAC, which has the benefit of a fully completed project, retains a windfall profit of $44,000. While I agree that Mon–Ray and Erickson are not entitled to the $44,000 because both failed to timely pursue their statutory remedy, I conclude that Granite should be entitled to the money in mitigation of the great economic loss that it has suffered in discharge of its payment and performance bond obligations.