*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0507**

Langford Tool & Drill Co.,
Plaintiff,

vs.

The 401 Group, LLC, et al.,
Defendants,

and

ADB Construction Company, Inc., et al.,
Intervenors and Third Party Plaintiffs,

vs.

Positive Companies, Inc.,
Respondent,

and

SR Mechanical, Inc.,
Intervenor and Third Party Plaintiff,

vs.

Sohan Uppal,
Appellant,

UN Hospitality, LLC,
Third Party Defendant,

and

Central Bank, as successor in interest to Mainstreet Bank,
Third Party Plaintiff,

vs.

Olsen Fire Protection, et al.,
Third Party Defendants,

and

Egan Companies, Inc.,
Intervening Mechanic's Lien Claimant,

and

Century Construction Company, Inc.,
Third Party Plaintiff,

vs.

The 401 Group, LLC,
Third Party Defendant,

Sohan Uppal,
Appellant,

Positive Companies, Inc.,
Respondent,

and

J. H. Larson Electrical Company,
Third Party Plaintiff,

vs.

Sohan Uppal,
Appellant,

UN Hospitality, et al.,
Third Party Defendants.

**Filed January 12, 2015**
**Reversed**
**Cleary, Chief Judge**
**Concurring specially, Johnson, Judge**

Gary G. Fuchs, Elizabeth E. Rein, Hammargren & Meyer, P.A., Bloomington, Minnesota (for respondent Positive Companies, Inc.)

Kay Nord Hunt, Barry A. O'Neil, Lommen Abdo, P.A., Minneapolis, Minnesota (for appellant Sohan Uppal)

Considered and decided by Johnson, Presiding Judge; Cleary, Chief Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

The district court held a bifurcated trial on breach of contract and unjust-enrichment claims. After the jury found there was no oral contract between the parties, the district court concluded that appellant had been unjustly enriched in the amount of $1,267,814. Because we hold that appellant did not receive a benefit in his status as a member of a limited liability company or personal guarantor, we reverse the district court's judgment.

## FACTS

Appellant Sohan Uppal is an owner of The 401 Group, LLC ("401 Group"), a Minnesota limited liability company ("LLC"). Appellant's wife and son are the other owners of the 401 Group. Respondent Positive Companies, Inc. is a general contractor. The 401 Group entered into two contracts with respondent for the improvement of real property and a restaurant located at 401 First Avenue North, Minneapolis, Minnesota.

Under the terms of the first contract, dated October 18, 2008, respondent would furnish labor, material, skill, and equipment necessary to renovate the real property for an amount of $1,836,143. During the performance of the contract, respondent and the 401 Group agreed to change orders through which respondent did additional work and received more payments. Under the terms of the second contract, dated March 23, 2009, respondent agreed to furnish labor, material, skill, and equipment necessary for work on a restaurant located in the 401 building. The contract price was $1 with work to be added by change orders. Respondent and the 401 Group agreed to a number of change orders under the second contract.

Before entering into the first contract, the 401 Group obtained two loans from Mainstreet Bank for a total of $6,130,000. The loan agreement provided that Mainstreet Bank would make periodic advances to appellant. The loan agreement contained collateral, including a mortgage on the 401 property, assignments of rent, and the personal guaranty of appellant and his wife. Mainstreet Bank recorded a first and second mortgage on the 401 property on May 15, 2008, and had priority to any other interests.

Mainstreet Bank ceased funding the draw requests because it alleged that the scope and type of renovations being performed at the project had changed dramatically. Mainstreet Bank did not resume funding the project and respondent and other subcontractors ceased working on the renovations. At the time that work ceased, the restaurant portion of the project was not complete. The Federal Deposit Insurance Corporation closed down Mainstreet Bank, and all of the bank's assets—including the loan at issue—were purchased by Central Bank. Because of the problems with the banks,

4

appellant began making payments on behalf of the 401 Group to the contractors from his personal account. Appellant paid close to $700,000 to respondent and its subcontractors during fall 2009. Appellant believed that he was just making bridge loans to 401 Group, and that he would eventually be reimbursed from Central Bank under the terms of the loan agreements. Appellant had previously received payments from the bank for bridge loans made to the 401 Group. Appellant also made promises to respondent that he would personally pay for respondent's construction work. The parties stipulated that appellant had received $1,087,449 worth of unpaid work at the time he made promises to be personally liable. After making the promises, respondent did another $180,365 worth of unpaid work.

The underlying litigation began when a subcontractor sued the 401 Group, Uppal Enterprises LLC, Mainstreet Bank (Central Bank joined as successor in interest), and other subcontractors in a mechanic's lien action. ADB Construction Company, Inc. intervened and served a third-party summons and complaint against respondent. Respondent asserted counterclaims and cross-claims against appellant, including breach of contract and unjust enrichment. As the senior lien holder, Central Bank foreclosed on the 401 property and bought it for $3,750,000 at a sheriff's sale. The sale was not enough to cover the 401 Group's liabilities, and Central Bank obtained a deficiency judgment against appellant based on his personal guaranty in the amount of $5,601,654.03, plus continuing interest, fees, and costs.[1] By the time the case got to trial, all of the claims had

---

[1] Notably, neither contract between the 401 Group and respondent has a personal guaranty of appellant.

5

been resolved except those between appellant and respondent, and appellant and a third-party subcontractor.

The district court ordered a bifurcated trial with the contract claim going to the jury and the unjust-enrichment claim reserved for a bench trial in case the jury found there was no contract. The jury concluded that there was no oral contract between respondent and appellant for respondent's construction work. However, the district court entered judgment against the 401 Group in the amount of $1,267,814 based on its contract with respondent. After the jury trial, respondent and appellant submitted motions regarding unjust enrichment. The district court never conducted a bench trial on issues of fact relating to unjust enrichment, but it did have a hearing on October 31, 2013. At the hearing, appellant argued that he was an owner of an LLC and protected from personal liability under corporate law. Respondent argued that it had no adequate remedy at law, and that the evidence in the record supported a judgment on the unjust-enrichment claim.

The district court issued findings of fact and conclusions of law, holding that appellant had been unjustly enriched in the amount of $1,267,814. The district court found that appellant had made oral promises to respondent that he would personally pay for respondent's services. The district court found appellant had personally benefitted from respondent's work in two ways: (1) through the work respondent did on collateral to a loan to which appellant was a personal guarantor, because it lowered the deficiency judgment against him, and (2) as the member of two limited liability companies. Because we conclude that appellant could not benefit in his status as a personal guarantor or

member of an LLC, we hold that the district court abused its discretion by erroneously applying the law.

**D E C I S I O N**

**I.      Respondent was not barred from bringing the unjust-enrichment claim**

Before examining the substantive arguments concerning unjust enrichment, we must decide whether there is a valid contract or other adequate remedy at law precluding the unjust-enrichment claim. Appellant argues that there is a valid contract on the subject matter and the unjust-enrichment claim is barred. Respondent counters that there is no contract between respondent and appellant. The district court held the unjust-enrichment claim was not barred: "Because the jury found no contract between [respondent] and [appellant], [respondent] has no adequate remedy at law." However, this is not a complete analysis of respondent's legal remedies because the district court entered a default judgment against the 401 Group for $1,267,814 on November 26, 2013, which could potentially be an adequate legal remedy.

A trial court's determination that respondent did not have an adequate remedy at law is a legal determination and is subject to de novo review. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996). "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co., v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Additionally, unjust enrichment is not available where a party failed to pursue other available legal remedies. *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. App. 2004), *review denied* (Minn. June 29, 2004). But "a remedy at law which is

7

practically ineffective is not an adequate remedy." *Ostrander v. Ostrander*, 190 Minn. 547, 549, 252 N.W. 449, 450 (1934).

Appellant argues that anytime there is a contract between two parties on a particular subject matter, there can be no equitable remedy on that same subject matter with a third party. Appellant seizes on the supreme court's statement in *Schimmelpfennig* that "where there is an express contract, there can be no contract implied in fact or quasi-contractual liability with respect to the same subject matter." *Schimmelpfennig v. Gaedke*, 223 Minn. 542, 548, 27 N.W.2d 416, 420 (1947). But appellant fails to give proper weight to a subsequent sentence in the opinion which says, "*[p]arties* to an express contract are entitled to have their rights and obligations with respect to its subject matter determined exclusively by its terms." *Id*. (emphasis added). Given the tension between these two propositions, we do not believe that *Schimmelpfennig* or other Minnesota cases support appellant's broad argument that a contract on a particular subject matter unequivocally bars any equitable relief on the same subject matter. *See, e.g.*, *Nw. Marble & Tile Co. v. Swenson*, 139 Minn. 365, 367, 166 N.W. 406, 407 (1918) ("It is now, as always, the law that where parties enter into an express contract they are bound by its terms."). In this case, the parties to the construction contract are 401 Group and respondent; appellant did not sign in a personal capacity and was not a personal guarantor. The contract between the 401 Group and respondent does not preclude respondent from bringing an unjust-enrichment claim against appellant on that subject matter given the facts of this case.

The next issue is whether there is adequate legal relief based on the $1,267,814 deficiency judgment respondent obtained against the 401 Group. If respondent is able to collect the deficiency judgment, then respondent will get paid twice for the same work. The district court's only mention of respondent's efforts to collect from the 401 Group was that "payment was not received [for] $1,267,814.00." The district court does not explain in its findings what steps respondent took to secure payment. However, appellant testified at trial that he had many businesses; that he created the 401 Group solely for the development of the 401 property; and that the 401 Group does not have any assets. The 401 Group will not be able to satisfy a million dollar default judgment with no assets. The default judgment is therefore ineffective and there is no adequate remedy at law for respondent. *See Ostrander*, 190 Minn. at 549, 252 N.W. at 450 (stating that an ineffective remedy at law is not an adequate remedy). Because there is no adequate remedy at law or contract between respondent and appellant, the unjust-enrichment claim was not barred.

**II.     The district court abused its discretion by erroneously applying the law and concluding that appellant was unjustly enriched in the amount of $1,267,814**

The district court found that appellant had been unjustly enriched in two ways: (1) by the services provided by respondent based on the reduced deficiency judgment against him as a personal guarantor, and (2) by the benefits he received as a member of an LLC that benefitted from respondent's work. Appellant argues that he cannot be liable for unjust enrichment in his capacity as a personal guarantor or member of an LLC. Respondent counters that appellant can be liable under unjust enrichment because he

9

made promises to pay respondent and personally benefitted from those promises. If appellant did not benefit as a personal guarantor or member of an LLC, then there is no other finding of fact from the district court order supporting an unjust-enrichment claim.

Before reaching the substantive arguments, we must determine the proper standard of review. Appellant argues that respondent made a post-trial motion for judgment as a matter of law pursuant to Minn. R. Civ. P. 50.02 for damages under unjust enrichment. Respondent argues that the issue of unjust enrichment was reserved for the district court and the findings of fact and conclusions of law were simply the district court's ruling on that issue.

Rule 50.02 governs motions for judgment as a matter of law, and Rule 52.01 governs findings of fact issued by the district court. Rule 50.02 permits a party to "make or renew a request for judgment as a matter of law by serving a motion." Minn. R. Civ. P. 50.02. A district court can grant judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Minn. R. Civ. P. 50.01. On the other hand, Rule 52.01 says: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment . . . ." Minn. R. Civ. P. 52.01.

Before trial, the district court stated: "By agreement of the parties, the determination of damages, if any, shall be bifurcated and damages, as well as any remaining equitable remedies, shall be set for Court Trial." There was never a "Court Trial" after the jury returned its verdict. Instead, respondent submitted a "Motion for

10

Judgment," and the district court ordered both parties to submit proposed findings of fact and conclusions of law regarding unjust enrichment. The district court made findings of fact and conclusions of law on the unjust-enrichment claim based on the record developed during the jury trial pursuant to Minn. R. Civ. P. 52.01. Thus, the district court never held that there was "no legally sufficient evidentiary basis" for the jury to reach a verdict in favor of appellant pursuant to Rule 50.02; rather, the district court made its own findings of fact and issued an order in a bifurcated trial under Rule 52.01. We will therefore review the district court's findings of fact and conclusions of law as we would review the result of any bench trial.

Unjust enrichment is an equitable doctrine. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). The Minnesota Supreme Court has described the standard of review for equitable determinations:

> We have said that we review equitable determinations for abuse of discretion. Under an abuse-of-discretion standard, we may overrule the district court when the court's ruling is based on an erroneous view of the law. Moreover, a district court abuses its discretion when its decision is against the facts in the record. In a bench trial, we review the findings of fact of the court under the clearly erroneous standard.

*City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23-24 (Minn. 2011) (citations omitted).

To establish a claim for unjust enrichment, respondent must show that appellant knowingly received something of value for which he in equity and good conscience should pay. *ServiceMaster of St. Cloud*, 544 N.W.2d at 306 (quotation omitted). An action for unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, "it must be shown that a party was unjustly enriched in the

11

sense that the term unjustly could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981) (quotation omitted). Unjust enrichment has also been extended to situations where it is morally wrong for one to retain a benefit. *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001).

> **A.** **The district court abused its discretion in concluding that appellant was unjustly enriched in his capacity as a personal guarantor to the bank**

The district court found that the work done by respondent increased the value of collateral and benefitted appellant because it resulted in a reduction of the bank's deficiency judgment against appellant as a personal guarantor. Appellant argues that the finding regarding the deficiency judgment violates public policy because every guarantor who tangentially benefits from the improvement of collateral held by the principal would be in jeopardy of unjust-enrichment claims if the principal failed to meet its obligations. Respondent argues that a personal guarantor can be liable under unjust enrichment.

Even assuming that there actually was a benefit in the form of a reduced deficiency judgment, we hold the district court abused its discretion by applying unjust enrichment to appellant in his status as a personal guarantor to the bank under these facts. Appellant did nothing illegal, unlawful, or morally wrong by acting as a guarantor on the loan agreement with the bank. Appellant had to make a personal guaranty in order to obtain financing for a business venture, and we do not consider such entrepreneurial risk illegal or immoral. And although appellant acted as a guarantor under the agreement with the bank, he was not a personal guarantor under any other agreement in this case. Moreover, the district court did not find that appellant made promises intending to

12

deceive respondent into providing free work based on knowledge that the principal would default on the loan and the bank would eventually collect a lessor deficiency judgment. Appellant therefore may have benefitted in his status as personal guarantor, but unjust enrichment does not lie simply because someone receives a benefit. *See Ramier*, 311 N.W.2d at 504 (requiring illegal or unlawful conduct).

Policy considerations also favor concluding that appellant cannot be liable as a personal guarantor. If this court were to find that appellant can be liable under unjust enrichment in his capacity as a personal guarantor, it could put guarantors at risk of unjust enrichment where they tangentially benefit from the work that a third party does to improve the collateral of the principal's loan. A decision that increases a personal guarantor's liability could have unintended or unforeseen consequences in the economy.

Because appellant did nothing illegal and it would not be morally wrong for him to retain any benefit he may have received as a guarantor, we hold that the district court abused its discretion by erroneously applying the law to the extent the district court relied on appellant's status as a personal guarantor to the bank to conclude that he was unjustly enriched.

### B.   The district court abused its discretion in concluding that appellant was unjustly enriched in his capacity as an owner of the LLC

The district court also relied on appellant's ownership interest in an LLC to conclude that he had received a benefit from respondent's work. The district court found that appellant "and members of his immediate family were also the owners of Uppal Enterprises, LLC, which, in turn, was a principal owner of UN Hospitality, LLC, which

13

operated the OM Restaurant." The OM Restaurant opened because of respondent's work, so the district court reasoned that appellant "benefitted personally from the opening and operation of the OM Restaurant." The district court similarly held that appellant benefitted through his ownership interest in the 401 Group. Appellant argues that the district court improperly pierced the corporate veil. Respondent argues that piercing the corporate veil is inapplicable and the issue is whether appellant benefitted from work provided to entities in which he held an ownership interest based on appellant's promises.

A member of a limited liability company is protected from personal liability for the company's acts, debts, liabilities, and obligations, unless the corporate veil is pierced. Minn. Stat. § 322B.303, subds. 1, 2 (2014); *see also Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979) ("Doing business in a corporate form in order to limit individual liability is not wrong; it is, in fact, one purpose for incorporating."). Piercing the corporate veil is an equitable remedy and is "intended to prevent abuse of corporate protections." *Equity Trust Co. Custodian v. Cole*, 766 N.W.2d 334, 339 (Minn. App. 2009).

The company that allegedly benefitted from respondent's services, Uppal Enterprises, did not even have a contract with respondent. The 401 Group was the entity that signed and breached the construction contract with respondent. The bridge loans made by appellant on behalf of 401 Group to respondent and others, were just that, bridge loans, and had been covered by the bank previously, pursuant to the loan agreement with the 401 Group. This led to the deficiency judgment against appellant in his capacity as personal guarantor. It was the 401 Group's "acts" that led to the supposed benefit to

14

appellant through his ownership interest, and appellant is protected from personal liability for the company's acts. Minn. Stat. § 322B.303, subd. 1. Appellant is similarly protected from liability based on Uppal Enterprises's acts under the same principles of corporate law. The remedy in situations where someone improperly uses the corporate form for protection is piercing the corporate veil, not unjust enrichment.[2]

Appellant likewise did nothing illegal or unlawful, and it would not be morally wrong for him to keep a benefit he received as the partial owner of an LLC. *See Ramier*, 311 N.W.2d at 504 (requiring illegal or unlawful conduct). If the court were to allow unjust enrichment as an equitable claim based on benefits a member receives from the corporation, it would open the door for unjust-enrichment claims to be brought by a third-party creditor against individual members of a corporation when the corporation defaults on its obligations, which in essence would render the corporate form meaningless. The district court abused its discretion by erroneously applying the law to the extent it relied on appellant's status as a member of an LLC to conclude that appellant was unjustly enriched.

---

[2] We could find no published cases in Minnesota addressing whether individual members of an LLC can be personally liable to the LLC's creditors under unjust enrichment, but the Nebraska Supreme Court addressed the issue and concluded that "unjust enrichment cannot be used to recover benefits obtained as an owner of a corporation unless the pleadings and evidence warrant piercing the corporate veil." *First Express Servs. Grp., Inc. v. Easter*, 840 N.W.2d 465, 477 (Neb. 2013) (citing other courts and stating it did not find any authority to the contrary). The concurrence's interpretation of Minn. Stat. § 322B.88 (2012), governing when an individual member of an LLC is a proper party to a proceeding, is inapposite. Appellant *was* a party to this proceeding, and a jury found that there was no contract between respondent and appellant for respondent's construction work. To then ignore this finding and find liability on the part of appellant in the absence of a contract would undermine, if not end, the legislatively created advantages to the LLC business organization.

The district court found that appellant was unjustly enriched in his status as a member of an LLC and guarantor. Because we hold that appellant was not unjustly enriched in either of those capacities, and because there is no other evidence in the record establishing that appellant benefitted in his personal capacity by respondent's work, we reverse.

**Reversed.**

**JOHNSON,** Judge (concurring specially)

I concur in the court's decision to reverse the judgment of the district court, but I reach that result for different reasons.

In my view, Positive's unjust-enrichment claim is viable. The theory of unjust enrichment is flexible and may be applied in many different circumstances. *See, e.g.*, *Klass v. Twin City Fed. Sav. & Loan Ass'n*, 291 Minn. 68, 71, 190 N.W.2d 493, 494-95 (1971); *Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 361-62 (1969); *Heywood v. Northern Assurance Co. of Detroit, Mich.*, 133 Minn. 360, 363, 158 N.W. 632, 633 (1916). A defendant's actions need not be unlawful; rather, to establish an unjust-enrichment claim, a plaintiff need only prove "that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *ServiceMaster v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (quoting *Klass*, 291 Minn. at 71, 190 N.W.2d at 494-95); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (2011).

Furthermore, the theory of unjust enrichment may allow for a recovery if a defendant is enriched by either an increase in the defendant's assets or a decrease in the defendant's liabilities. Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (2011). "A saved expenditure or a discharged obligation is no less beneficial to the recipient than a direct transfer." *Id.* Thus, Positive conceivably may recover from Uppal to the extent that he benefited from a decrease in the amount of the deficiency judgment on his personal guarantee, which is the subject of part II.A. of the opinion of the court. Likewise, Positive conceivably may recover from Uppal to the extent that he

benefited from an increase in the value of the two limited-liability companies in which he has or had an ownership interest or from any distributions the companies made to him, which is the subject of part II.B. of the opinion of the court. There is no precedent for the proposition that the particular types of unjust enrichment that are alleged to exist in this case are not cognizable forms of enrichment.

Moreover, Positive's unjust-enrichment claim against Uppal does not depend on a piercing of the companies' veil of limited liability. To be sure, the veil protects a member of a limited liability company if another person seeks to hold the member, "merely on account of [the member's] status, personally liable for the acts, debts, liabilities, or obligations of the limited liability company." Minn. Stat. § 322B.303, subd. 1 (2012). But the company's limited liability does *not* bar a claim against a member if "the proceeding involves a claim of personal liability or responsibility of that member and that claim has some basis other than the member's status as a member." Minn. Stat. § 322B.88(2) (2012); *see also In re Dougherty*, 482 N.W.2d 485, 490-91 (Minn. App. 1992) (holding that piercing doctrine applies only if plaintiff seeks to hold defendant liable "solely because of his status as a stockholder or officer of the corporation"), *review denied* (Minn. June 10, 1992). In this case, Positive's unjust-enrichment claim is based on actions taken and statements made by Uppal in his individual capacity. Accordingly, Positive's unjust-enrichment claim does not implicate the companies' veil of limited liability.

Nonetheless, Positive's unjust-enrichment claim fails for lack of evidence of the amount by which Uppal was enriched, as Uppal contends in an alternative argument.

CS-2

Positive relies solely on the stipulated value of the work performed, *i.e.*, the value of the labor and materials that were devoted to the project. But in an unjust-enrichment case, damages are measured by "what the person allegedly enriched has received, not on what the opposing party has lost." *Georgopolis v. George*, 237 Minn. 176, 185, 54 N.W.2d 137, 142 (1952); *see also Anderson v. DeLisle*, 352 N.W.2d 794, 796 (Minn. App. 1984), *review denied* (Minn. Nov. 8, 1984). Positive did not prove all elements of its claim because it did not introduce evidence of the amount of the decrease in the deficiency judgment against Uppal, the amount of the increase (if any) in the value of the two limited-liability companies in which he had and has an ownership interest, and the amounts of any distributions the companies made to him (if any).[3] Without such evidence, there is no basis for the district court's finding concerning the amount of Uppal's enrichment and, thus, no basis for a recovery on Positive's unjust-enrichment claim. *See Gillette v. Storm Circle Ranch*, 619 P.2d 1116, 1120 (Idaho 1980) (reversing judgment on unjust-enrichment claim because plaintiff introduced evidence of his costs but not evidence of value of defendant's benefit); *Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 79-80 (Wis. 1996) (reversing judgment on

---

[3]Positive did not employ an expert witness to analyze the financial evidence and provide opinion evidence of the amount of Uppal's enrichment. Positive also did not attempt to quantify Uppal's enrichment through its examinations of lay witnesses during the jury trial. When Uppal moved for a directed verdict on this ground, Positive's responsive argument did not identify any particular evidence of the amount of Uppal's enrichment. No additional evidence was presented to the district court after the jury's verdict for purposes of the equitable claim that was tried to the court. The same district court judge presided over the multi-party case and entered the order for the deficiency judgment, but there is no indication that any of the previously submitted evidence was expressly incorporated into the evidentiary record of the trial of Positive's claims against Uppal.

unjust-enrichment claim because plaintiff introduced evidence of value of its services but not evidence of value of defendant's benefit).

For these reasons, I join in the court's decision to reverse the judgment of the district court.